Joseph P. CONNORS, Sr., Donald E. Pierce, Jr., William Miller, William B. Jordan, and Paul R. Dean, as Trustees of the United Mine Workers of America 1950 Pension Plan, Plaintiffs,

v.

BRADY–CLINE COAL COMPANY, Margaret-Peerless Coal Company, Gauley Coal Sales Company, Defendants.

Civ. A. No. 85–3772.

United States District Court, District of Columbia.

March 31, 1987.

**6**

Robert Gallagher, Groom & Nordberg, Washington, D.C., for plaintiffs.

Alicia M. Kershaw, Lane & Edson, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiffs, trustees of the United Mine Workers of America ("UMWA") 1950 Pension Plan (the "Plan"), brought this action to collect withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* (1982). This matter is presently before the Court on plaintiffs' motion for summary judgment. Upon consideration of plaintiffs' motion, the opposition thereto, and the entire record in this action, the Court shall enter summary judgment for plaintiffs.

## BACKGROUND

Under MPPAA, multiemployer plans are maintained pursuant to one or more collective bargaining agreements, covering the employees of two or more employers. The collective bargaining agreements generally specify the rates participating employers are to contribute to a pooled fund administered by a board of trustees. *See The Washington Star Company v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502, 1504 (D.C. Cir.1984).

When an employer withdraws from the Plan, the plan sponsors shall "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." 29 U.S.C. § 1382; *see* 29 U.S.C. § 1399 (requirements concerning notice, demand, and liability calculations). Under MPPAA, an employer is deemed to have withdrawn from a plan, thereby incurring withdrawal liability, when the employer

(1) permanently ceases to have an obligation to contribute under the plan, or

(2) permanently ceases all covered operations under the plan.

29 U.S.C. § 1383(a). The withdrawal liability provisions of MPPAA "were enacted by Congress to protect the security of workers covered by multiemployer plans from the deprivation of anticipated retirement benefits." *T.I.M.E.–DC, Inc. v. I.A.M. National Pension Fund,* 597 F.Supp. 256 (D.D.C. 1984). Any disputes over withdrawal liability determinations are to be resolved through arbitration. 29 U.S.C. § 1401.

## STATEMENT OF FACTS

Plaintiffs are members of the board of trustees and sponsors of a multiemployer pension plan maintained pursuant to a collective bargaining agreement between the UMWA and the Bituminous Coal Operators' Association, Inc. *See* 29 U.S.C. § 1301(a). Defendants are West Virginia corporations. In 1982, Samuel Brady, III and Jack Cline each owned 50 percent of the outstanding shares of all classes of stock of Brady-Cline Coal Company ("Brady-Cline") and of Margaret-Peerless Coal Company ("Margaret-Peerless"). Margaret-Peerless, in turn, owned 100 percent of the outstanding stock of Gauley Coal Sales Company ("Gauley Coal").

Under the National Bituminous Coal Wage Agreement of 1974, 1978 and 1981 and other prior collective bargaining agreements, to which Brady-Cline subscribed, Brady-Cline was obligated to and did contribute funds to the Plan on behalf of its employees covered by the agreements. Plaintiffs determined that in October, 1982

Brady-Cline ceased its operations, thereby withdrawing from the Plan. Pursuant to 29 U.S.C. §§ 1381, 1382 of MPPAA, the trustees established that Brady-Cline's withdrawal liability to the 1950 Pension Plan totaled $514,612.83. Accordingly, plaintiffs set up a schedule of 42 monthly payments of $13,172.00, with the first payment due on April 8, 1985 and one final payment due in the amount of $4,042.72. By letter dated January 8, 1985, plaintiffs notified Brady-Cline of their determinations and demanded payment. To date, defendants have made none of the withdrawal liability payments. On September 10, 1985, Brady-Cline sought arbitration of plaintiffs' withdrawal liability determination. *See* 29 U.S.C. § 1401(a)(1). The arbitration hearing was set for October 30, 1986.[1]

Brady-Cline is insolvent; Margaret-Peerless is insolvent and inactive. Gauley Coal is insolvent but continues to operate.

## DISCUSSION

■ Summary judgment is appropriate when there are no genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has stated that:

Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, courts must approach summary judgment motions with an even hand, evaluating all concrete evidence provided, and drawing all inferences in favor of the party opposing the motion.

*Interim Withdrawal Liability Payments*

MPPAA provides that:

[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2). The act implements this provision through 29 U.S.C. § 1401(d), entitled "payments by employer prior and subsequent to determinations by arbitrator." Section 1401(d) states:

Payments shall be made by an employer in accordance with the determinations made under this part [29 U.S.C. §§ 1381 *et seq.*] until the arbitrator issues a final decision with respect to the determination submitted for arbitration, *with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.*

(Emphasis added.) It is well settled that the employer must make assessed withdrawal payments pending arbitration of any dispute over the liability determinations. *See e.g., Connors v. Calvert Development Company*, 622 F.Supp. 877 (D.D.C.1985); *I.A.M. National Pension Fund Benefit Plan A v. Dravo Corporation*, 641 F.Supp. 50 (D.D.C.1985).

Defendants, however, raise several smokescreens in an effort to circumvent the "elaborate statutory scheme [of MPPAA] for resolving disputes that may arise over the determination and amount of withdrawal liability. To permit an employer to stylize his claim into a question of law and thereby bypass this framework would surely frustrate the intent of Congress and should not be sanctioned by the courts." *Combs v. Pelbro Fuel, Inc.*, Civil Action No. 83–1524, slip op. at 14 (D.D.C. Nov. 15, 1984) [Available on WESTLAW, DCT database]. *See also T.I.M.E.–DC, Inc. v. Management-Labor Welfare & Pension Funds of Local 1730 International Longshoreman's Association*, 756 F.2d 939 (2nd Cir.1985).

Defendants contend that the trustees improperly included in the liability calcula-

---

1. Although defendants now contest the determination that Brady-Cline permanently withdrew from the Plan, they are not raising this argument in arbitration. Muncy Declaration, ¶ 3.

tions six coal mine "facilities" which allegedly had closed prior to the effective date of MPPAA. Defendants, however, are raising a question, at least partially, grounded in fact which initially must be resolved by the arbitrator.[2] *See, e.g., Republic Industries, Inc. v. Teamsters Joint Council of Virginia Pension Fund,* 718 F.2d 628 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Williamson Shaft Contracting Co. v. United Mine Workers of America 1974 Pension Plan,* 585 F.Supp. 633 (W.D.Penn. 1984).

■ Defendants also contend that there is a factual dispute over whether Brady-Cline did indeed withdraw from the Plan. Again, this is the very issue to be resolved in arbitration. *See, e.g., Combs v. Art Harold Trucking,* No. 84–1789 (D.D.C. Feb. 19, 1986) [Available on WESTLAW, DCT database]; *Connors v. Calvert Development Company,* 622 F.Supp. at 879. Therefore, to the extent defendants contest the determination and the amount of withdrawal liability, the Court shall not address the merits of their claims, but shall enter summary judgment for plaintiffs.[3]

Defendants further argue that interim withdrawal payments are not required because irreparable harm would result. Defendants claim that if they are required to make the payments demanded by plaintiffs, Gauley Coal will cease operations, resulting in its withdrawal from the 1974 Fund. This Circuit, however, has recently noted that under MPPAA "adequate safeguards exist to insure that ... [the employer] will promptly recover any overpayment in the lump sum with interest." *I.A.M. National Pension Benefit Plan A v. Cooper Indus-*

*tries, Inc.,* 789 F.2d 21, 25 (D.C.Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). The *Cooper* court further found that "Congress showed no ... solicitude for the cash flow problems of employers. Indeed, ... under the MPPAA's statutory scheme, any assessment of irreparable harm flowing from an injunctive order regarding interim withdrawal liability payments would almost certainly favor the pension fund." *Id.; see also Trustees of Retirement Fund v. Lazar-Wisotzky, Inc.,* 550 F.Supp. 35 (S.D.N.Y.1982) (Congress intended to impose the immediate payment requirement despite the substantial hardship to an employer which might result), *aff'd,* 738 F.2d 419 (2nd Cir.1984). One court, while recognizing that interim payments would destroy the liquidation value of the employer, found that "it would be analytically unsound to adopt an approach that makes the outcome of the taking argument depend on the relationship between the value of the employer's assets and the amount of withdrawal liability asserted." *Calvert & Youngblood Coal Company v. UMWA 1950 Pension Trust Fund,* 6 E.B.C. 1106, 1112 (N.D. Ala.1985) (withdrawal liability payments are not an unconstitutional taking of property). Similarly, here too the Court would be ill advised to engage in such an analysis. Although the Court is sympathetic to defendants' situation, the statutory structure of MPPAA establishes arbitration as the first forum for resolution of withdrawal liability disputes. Summary judgment, therefore, shall be granted for plaintiffs and defendants shall be directed to make the interim withdrawal liability payments. If the arbitrator finds that plaintiffs miscalculated the withdrawal liability,

---

**2.** Defendants, citing to *I.A.M. National Pension Fund v. Stockton TRI Industries,* 727 F.2d 1204 (D.C.Cir.1984), claim that the Court should resolve its dispute over the determination and amount of withdrawal liability. The *Stockton* court, however, carved out a narrow exception, inapplicable in this case, to the general rule that parties must first seek arbitration. As one court found, "the issues of whether the employer has completely withdrawn and if so, the amount of the liability, are quintessentially within the expertise of an arbitrator skilled in pension matters." *Connors v. B.M.C. Coal Company,* 634

F.Supp. 74, 75 (D.D.C.1986) (*Stockton* does not apply).

**3.** Defendants assert that plaintiffs cannot in good faith seek interim payments when they have delayed arbitration on the merits of the underlying claims. Defendants, however, agreed to continue the arbitration hearing to allow Brady-Cline time to produce certain documents for the trustees to review in preparation for the hearing. Thus defendants' good faith claim is without merit.

any excess payments plus interest must be refunded immediately to defendants. 29 U.S.C. § 1401(d).

*Controlled Group*

 ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b). MPPAA further provides that "if an employer withdraws from a multiemployer plan ..., then the employer is liable to the plan." 29 U.S.C. § 1381(a). If two or more companies are within a control group, then they are deemed a single employer for purposes of withdrawal liability. *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118 (3rd Cir. 1986); *Combs v. Adkins & Adkins Coal Company*, 597 F.Supp. 122 (D.D.C.1984). The Pension Benefit Guarantee Corporation ("PBGC"), the government agency responsible for administering ERISA, promulgated regulations under 29 U.S.C. § 1301(b) incorporating the provisions of Section 414(c) of the Internal Revenue Code. 29 C.F.R. § 2612. The Treasury Regulations issued under Section 414(c) define the control group term as follows:

> [t]he term "brother-sister group of trades or businesses under common control" means two or more organizations conducting trades or businesses, if (i) the same five or fewer persons who are individuals ... own ... singly or in combination, a controlling interest of each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.

Temp.Treas.Reg. § 11.414(c)–2(c).

 Defendants concede that as of October, 1982, Brady-Cline, Margaret-Peerless and Gauley Coal were members of a controlled group. Def.Mem. at 12. Defendants argue, however, that Margaret-Peerless and Gauley Coal cannot be held liable

because they left the controlled group by selling stock in September, 1983, prior to receiving plaintiffs' notice of the withdrawal liability. Defendants' position, though, would allow a member of a controlled group to escape liability by selling stock after withdrawal but prior to notice from the pension fund of withdrawal liability, which is exactly the result Congress intended to prevent. *See Connors v. Calvert Development Company*, 622 F.Supp. at 882. PBGC in its preamble to the regulation entitled "PBGC Regulation on Reduction or Waiver of Complete Withdrawal Liability" offered the following scenario:

> Assume that corporation S is a member of controlled group PS. Upon the complete withdrawal of S from its multiemployer plan, both P and S are jointly and severally liable for any withdrawal liability resulting from S's complete withdrawal. If S is later sold to X and becomes part of controlled group SX, both P and S remain liable for the complete withdrawal but X does not become liable. If, instead, controlled group PS acquires or combines with T and becomes controlled group PST, P and S remain liable for the complete withdrawal but T does not become liable.

51 Fed.Reg. 10300, 10304 (1986) (to be codified at 29 C.F.R. §§ 2640, 2647). Margaret-Peerless and Gauley Coal were members of the controlled group when Brady-Cline allegedly withdrew from the Plan, and, therefore, are jointly and severally liable.

 Defendants further assert that Gauley Coal should not be held liable because it has not withdrawn from the 1950 Plan since it still contributes to the 1974 UMWA Retirement Fund. The funds, however, are separate legal entities, with separate legal documents, covering different groups of participants, and holding assets in separate trusts. *See Short v. UMWA 1950 Pension Trust*, 728 F.2d 528, 531 (D.C.Cir.1984). Gauley Coal's continued participation in the 1974 Plan, therefore, has no effect on its liability with respect to the 1950 Pension Plan.[4]

---

4. Defendants also suggest that imposing con-

trolled group liability on Margaret-Peerless and

**10**

*Liquidated Damages, Costs and Attorney's Fees*

 Plaintiffs seek to recover not only interim payments but also damages, costs and attorney's fees incurred in bringing this action. ERISA provides:

[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the Court *shall* award the plan ...

(C) an amount equal to the greater of.

. . . . .

(ii) liquidated damages ...

(D) reasonable attorney's fees and costs of the action to paid by the defendant ...

29 U.S.C. § 1132(g)(2) (emphasis added). For purposes of this section, the failure to make withdrawal liability payments is treated as a delinquent contribution within the meaning of Section 1145. 29 U.S.C. § 1451(b). The language of Section 1132(g)(2) is mandatory; the decision to award attorney's fees to successful litigants in actions for delinquent payments does not fall to the discretion of the Court. *See United Retail & Wholesale Employees, Teamsters Union v. Yahn & McDonnell, Inc.,* 787 F.2d 128 (3rd Cir.1986); *Trustees of Amalgamated Insurance Fund v. Geltman Industries,* 784 F.2d 926 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). Plaintiffs, having succeeded on their motion for summary judgment to collect withdrawal liabili-ty payments, are entitled to liquidated damages, costs and reasonable attorney's fees.[5]

For all of the above reasons, the Court shall grant plaintiffs' motion for summary judgment.[6] An order consistent with the foregoing conclusions accompanies this opinion.

### ORDER

In accordance with the terms of the memorandum opinion issued herewith, it is this 31st day of March, 1987,

ORDERED that plaintiffs' motion for summary judgment is hereby granted; and it is

FURTHER ORDERED that defendants shall make interim withdrawal liability payments pending arbitration; and it is

FURTHER ORDERED that this case is dismissed in its entirety.

Gauley Coal would breach due process. It is well settled, though, that the withdrawal liability provisions of MPPAA are constitutional and do not violate the due process clause of the Fifth Amendment. *See, e.g., Washington Star Company, supra; Dorn's Transportation v. I.A.M. National Pension Fund Benefit Plan,* 578 F.Supp. 1222 (D.D.C.1984), *aff'd,* 753 F.2d 166 (D.C.Cir. 1985). The Court, moreover, finds no merit to defendants' contention that it was a breach of due process to assess liability on Margaret-Peerless and Gualey Coal.

**5.** Defendants cite to two recent cases decided by another court in this Circuit, where the court declined to award attorney's fees to the trustees of the plan but instead denied their request for attorney's fees without prejudice to renewal upon the effective date of the arbitrator's decision. *Dixie Fuel, supra; Dravo, supra.* Referring to, *inter alia,* 29 U.S.C. § 1132(g)(1), the court found that award of costs, expenses and fees is discretionary in an action to recover withdrawal payments. Section 1132(g)(1), however, does not apply if the action falls within Section 1132(g)(2) as the matter presently before the Court does. As the Third Circuit noted, "the fact that it [§ 1132(g)(2)] amended a section that gave the judge discretion to award such fees buttresses the conclusion that § 1132 made attorney's fees, costs and liquidated damages mandatory upon a judgment in favor of a pension plan." *Yahn & McDonnell,* 787 F.2d at 134.

**6.** Defendants shall be required to make interim payments of their withdrawal liability pending arbitration. At this juncture in the dispute, as plaintiffs acknowledge, they cannot accelerate future installment payments for withdrawal liability.