**PAINE, WEBBER, JACKSON & CURTIS, INC., Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**Civ. A. No. 82–680–JLL.**

United States District Court,
D. Delaware.

Jan. 17, 1984.

Alan T. Boyd of Bayard, Brill & Handelman, P.A., Wilmington, Del., and Kenneth E. Madsen, Richard L. Mayer and James Galbraith of Kenyon & Kenyon, New York City, of counsel, for plaintiff.

Rudolf E. Hutz and James M. Mulligan of Connolly, Bove, Lodge & Hutz, Wilmington, Del., Stephen B. Judlowe and Francis J. Murphy of Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, and James W. Grady, Jr., Frank M. Macioce,

Jr., and Alice M. Clark, New York City, of Merrill Lynch & Co., Inc., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

Plaintiff, Paine, Webber, Jackson & Curtis, Inc. ("Paine Webber"), commenced this litigation[1] seeking a declaratory judgment of patent invalidity, unenforceability and non-infringement of United States Patent No. 4,346,442 ("the '442 patent") entitled "Securities Brokerage-Cash Management System" owned by defendant, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). Merrill Lynch counterclaimed charging that Paine Webber's cash management account known as RMA infringes the '442 patent and has demanded a jury trial.

Two motions are presently before the Court for decision: (1) Merrill Lynch's motion to file an amended answer in order to plead three additional counterclaims,[2] and (2) Paine Webber's motion for separate trials on liability and damages and for a stay of discovery on damages.[3] These motions will be considered in that order.

## I. MERRILL LYNCH'S MOTION TO AMEND ITS ANSWER

Merrill Lynch moves for an Order pursuant to Rule 15, Fed.R.Civ.P., granting it leave to amend its Answer to add an allegation to its First Counterclaim that Paine Webber's RMA account also infringes divisional United States Patent No. 4,376,978 ("the '978 patent") which issued well after the commencement of this litigation.[4] The new Second Counterclaim alleges that Paine Webber's use of "RMA" infringes Merrill Lynch's CMA service mark registration.[5] The Third Counterclaim charges Paine Webber with misappropriating Mer-

rill Lynch's trade secrets, described in defendant's brief, as relating "to the marketing and internal administration of [its] central assets accounts."[6] Paine Webber does not oppose adding the first two counterclaims for patent and trademark infringement but does oppose the Third Counterclaim of misappropriating trade secrets.

First, Merrill Lynch contends that its charge of trade-secret misappropriation is a compulsory counterclaim and therefore the Court has ancillary jurisdiction over that counterclaim. *Nationwide Mutual Fire Insurance v. T. & D. Cottage Auto Parts & Service, Inc.,* 705 F.2d 685, 687 (3d Cir.1983). The Court disagrees.

Rule 13(a), Fed.R.Civ.P., defines a compulsory counterclaim as one which:

"arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...."

The Court of Appeals for the Third Circuit has outlined a test for determining whether a counterclaim is compulsory, as follows:

We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. *Zion v. Sentry Safety Control Corp.,* 3 Cir., 1958, 258 F.2d 31. See also *United Artists Corp. v. Masterpiece Productions, Inc.,* 2 Cir., 1955, 221 F.2d 213, 216. The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or

1. For prior proceedings and background of this litigation, *see* this Court's earlier opinion, *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 564 F.Supp. 1358 (D.Del.1983).

2. Docket Item ("D.I.") 73.

3. D.I. 66.

4. D.I. 73 at 3–4.

5. *Id.* at 4–7.

6. *Id.* at 7–8; D.I. 83 at 2.

where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961).

Thus an analysis must be made to determine whether the Third Counterclaim involves: (1) many of the same factual issues; (2) the same factual or legal issues; or (3) offshoots of the same basic controversy between the parties. *See Xerox Corp. v. SCM Corporation*, 576 F.2d 1057, 1059 (3d Cir.1978). Applying this kind of analysis, the Court finds that Merrill Lynch's trade secret counterclaim bears no logical relationship to the claims asserted in the complaint.

The claim asserted by Paine Webber and the tradesecret misappropriation counterclaim of Merrill Lynch are not the same nor is there any indication that there would be a duplication of evidence. Paine Webber's claim is that the patents involved are invalid, unenforceable and not infringed. The transactions or occurrences involved in Paine Webber's claim are the activities of Merrill Lynch in obtaining its patents and Paine Webber's designing and implementing its computer hardware and software which supports its RMA system. On the other hand, the manner in which Paine Webber explained its RMA service to its brokers, the way it organized its offices to handle RMA accounts and its method of marketing those accounts have nothing to do with Paine Webber's claim that Merrill Lynch's patents are invalid, unenforceable and not infringed. It cannot be said that Merrill Lynch's unfair competition counterclaim arises out of Paine Webber's claim.

Merrill Lynch also contends that if its unfair competition counterclaim is not compulsory, it is permissive and should be allowed under Rule 13(b), Fed.R.Civ.P. Merrill Lynch further recognizes that a permissive counterclaim must have an independent basis for federal jurisdiction and it contends such jurisdiction is found in 28 U.S.C. § 1338(b), which reads:

> The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

Paine Webber does not contend that its patent claim is not substantial; rather, the parties disagree whether or not the misappropriated trade secrets relating to marketing and administration are "related" to the patents involved. While this Court does not believe that there is much of an overlap of the facts between the proposed counterclaim and the patent issues in this case, it notes that courts generally have given a broad meaning to "related" when the question of jurisdiction of the permissive counterclaim is raised. Accordingly, the Court finds that it probably has jurisdiction of the unfair competition claims under 28 U.S.C. § 1338(b).

█ Nevertheless, even though this Court may have jurisdiction over Merrill Lynch's state claim of unfair competition under a broad reading of "related" in § 1338(b), the Court, in its sound discretion, may refuse to exercise such jurisdiction if judicial economy, convenience and fairness to litigants are not promoted. *See Scholz Homes, Inc. v. Maddox*, 379 F.2d 84 (6th Cir.1967); *Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748 (9th Cir.1974). Thus, the question whether a court should exercise jurisdiction under § 1338(b) is similar to the question of whether a court should exercise pendent jurisdiction under the doctrine of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). 1 J. Moore, Federal Practice ¶ 0.62, p. 700. Pendent jurisdiction need not be exercised in every case in which it is found to exist. It is a doctrine of discretion and not of right. Its justification lies in the considerations of judicial economy, convenience and fairness to the

parties and when these are not present a federal court should hesitate to exercise jurisdiction over state claims. *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

■ Even though there is very little, if any, overlap of the factual and legal issues with the patent claims and the unfair competition claim, this Court would probably rule that the unfair competition claim would be tried together if the case were to be tried to the Court. But in this case a jury trial has been demanded and this is the chief factor which causes this Court to decline jurisdiction over the state misappropriation of secrets counterclaim. The likelihood of jury confusion in this case is strong. The jury will be confronted with two patents and a trademark claim. The case already contains three theories of legal relief and to add another completely different group of legal principles and factual issues would make the jury's task unnecessarily complicated. Courts have often considered this to be an important factor when declining jurisdiction over a state claim which will make the case excessively complicated or confuse the jury. *See United Mine Workers v. Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139; *In re Western Liquid Asphalt Cases*, 487 F.2d 202, 206 (9th Cir. 1973), *rev'd on other grounds*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); *Brainerd v. Potratz*, 421 F.Supp. 836, 840 (N.D.Ill.1976), *aff'd*, 566 F.2d 1177 (7th Cir. 1977); *Reyes v. Edmunds*, 416 F.Supp. 649, 651 (D.Minn.1976); *Kerby v. Commodity Resources, Inc.*, 395 F.Supp. 786, 790 (D.Col.1975).

By concluding that the addition of the unfair competition claim will lead to jury confusion is not meant to disparage our jury system or those citizens who are called to serve as jurors. Indeed, this Court has found during fifteen years' experience as a federal trial judge that in the usual run of litigation, jurors do bring collective wisdom, intelligence and dedication to their tasks. In most cases they are dealing with concepts, principles and facts which are within their common experience. But cases dealing in patent and trademark law involve facts, concepts and principles not usually dealt with by randomly selected jurors. Nonetheless, when they sit as jurors in a patent or trademark case, they are expected to deal with these strange new concepts and factual situations, comprehend the judge's oral jury instructions as to the law, and then, on the basis of their recollection of the facts, reach a verdict in a relatively short period of time. With this patent and trademark litigation as complex as it is, it should not be further complicated by the addition of the trade secret issues. On the other hand, when a complex case is tried to the Court, the Court which most often has had some experience with the nuances of patent and trademark law, renders a decision only after studying the parties' post-trial briefs and reviewing the trial transcript of the evidence—an advantage which a jury does not have.

Accordingly, the Court concludes that the likelihood of jury confusion in treating divergent theories for relief in an already complex case fully justifies this Court in declining to exercise jurisdiction over the unfair competition counterclaim which has very little factual or legal connection with the patent and trademark issues presented by this litigation.

## II. MOTION FOR SEPARATE TRIALS OF LIABILITY AND DAMAGE ISSUES

■ Paine Webber has moved, pursuant to Rule 42(b), Fed.R.Civ.P., for an order requiring the issues of liability to be tried separately and prior to the trial of the issue of damages. In addition, Paine Webber seeks to stay all proceedings, including discovery, which relates to the issue of damages, until after the trial on the liability issues has been determined. Relying upon the rationale of *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977, 982–86 (D.Del.1982), and *Swofford v. B & W Inc.*, 34 F.R.D. 15, 19–20 (S.D.Tex.1963), *aff'd*, 336 F.2d 406 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557

(1965). This Court is convinced that both of Paine Webber's motions should be granted.

Merrill Lynch advances two arguments opposing the motions: (1) the liability and damages issues are so interrelated and involve overlapping proofs that they should be tried together, and (2) the bifurcation of the liability-damages issues would violate the right to a jury trial preserved by the Seventh Amendment. The Court finds these arguments without merit.

Merrill Lynch contends that "commercial success," which is a secondary consideration in determining obviousness under 35 U.S.C. § 103, requires the same evidence and the same findings with respect to damages. Merrill Lynch specifically argues that Paine Webber's RMA sales, the number and growth of Paine Webber RMA accounts and the profitability of those accounts will constitute evidence relative to commercial success and damages. In the context of this case, the Court finds that the evidence of commercial success and damage issue are far from identical.

First, when commercial success is an issue and the patent owner practices the patent, such success is most easily demonstrated by the activities of the patentee. Merrill Lynch claims to practice the invention of the patent through its own CMA program which is alleged to include about a million accounts. It is unlikely Merrill Lynch needs to rely upon Paine Webber's 16,000 RMA accounts to establish commercial success. It is true in some cases courts have considered the infringer's sales as evidence of commercial success, but this is generally because, unlike here, the patentee did not itself practice the patented invention. *See, e.g., Aerosol Research Co. v. Scovill Mfg. Co.,* 334 F.2d 751 (7th Cir. 1964).

Second, the evidence introduced to show "commercial success" will be less extensive and of a different character from that to prove damages. The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller. *See, e.g., In re Sernaker,* 702 F.2d 989, 996 (C.A.F.C.1983) (commercial success shown by sale of millions of patented emblems by appellant's licensees); *Hercules, Inc. v. Exxon Corp.,* 497 F.Supp. 661, 678 (D.Del. 1980) (commercial success shown by substantial increases in sales of patented product).

The Court is not convinced that Merrill Lynch, in order to show commercial success, will need the extensive and time consuming evidence necessary to prove damages whether damages are predicated on a theory of "loss profits" or on a theory of "reasonable royalty" or both. In this case there is no substantial overlap of testimony between the proof of commercial success and proof of damages which militates against bifurcating the trial.

Merrill Lynch also argues that its constitutional right to a jury trial will be denied if liability and damages are tried separately and contends that separate trials violate the Seventh Amendment when the issues overlap. However, separate trials only violate the Seventh Amendment when they involve *both* overlapping issues *and* different juries.

In this case, the first condition is not met. The alleged "overlap" between the issue of commercial success and the issue of damages simply does not exist as discussed above. In *Smith v. Alyeska Pipeline Service Co.,* 538 F.Supp. at 984, this Court set out the conditions under which different juries cannot be used:

> "Two juries cannot *decide* factual questions that are common to both trials and which are *essential* to a verdict or an award."

(Emphasis added.) In this case the jury will not be required to *decide* any issues concerning damages in the liability phase. The jury will be required to decide whether

commercial success, which is not denied, is attributable to the alleged inventions of the patents in suit, but this raises no issue common with damages.

Furthermore, even though commercial success may be an issue, it is inaccurate to say, as Merrill Lynch argues, that the jury in the liability trial would need to make "findings" with respect to "Paine Webber profits and profitability." Paine Webber's relatively limited commercial activities are hardly essential to the question of commercial success, and even if they were, the jury will not be required to make "findings" on the details of Paine Webber's financial data (e.g., profits of the kind used to determine damages) on that issue.

Consequently, the first jury and the second jury will not decide the same essential factual issues, and their respective "findings" will not be possibly inconsistent. The fact that some of the same *evidence* used for one issue may, to a very limited degree, also be used for the other, is wholly beside the point. The prohibition is not against having two juries review the same *evidence*, but rather against having two juries *decide* the same *essential issues*. The Court concludes that by bifurcating the trial, Merrill Lynch will not be denied Seventh Amendment rights to a jury.

Finally, the Court finds, in view of the complex case to be tried with the allowed additional counterclaims, that separate trials will reduce jury confusion, tend to avoid prejudice, expedite the date of the liability trial and possibly avoid additional expenses if a damage trial becomes unnecessary. The Court further finds it to be in the interest of expedition and economy to defer costly and possibly unnecessary discovery proceedings on the damages issues pending the resolution of the liability issues. *Ellingson Timber Co. v. Great Northern Railway Co.*, 424 F.2d 497, 499 (9th Cir. 1970), *cert. denied*, 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970).

An order will be entered in accordance with this Memorandum Opinion.