INDUSTRIAS METÁLICAS MARVA,
INC., Plaintiff,

v.

Empresas LAUSELL, Defendant.

Civil No. 96–1697 (JP).

United States District Court,
D. Puerto Rico.

April 1, 1997.

Marcos A. Ramírez Lavandero, Old San Juan, for plaintiff.

Steven C. Lausell, Jiménez, Graffam & Lausell, San Juan, for defendant.

## ORDER

PIERAS, District Judge.

### I. INTRODUCTION

The Court has before it Defendant's Motion Under Rule 42(b) for Bifurcation of Liability and Damages Issues into Separate Trials (**docket No. 6**).

Industrias Metálicas Marva, Inc. ("Marva") brings this patent infringement action alleging that Lausell Aluminum Jealousies, Inc. ("Lausell") window model Super Guard 2000 and its variations include louver assemblies that infringe on Marva's patent. Specifically, the plaintiff argues that its window's patented waterproofing system, consisting of various well-placed protrusions, grooves, edges, and channels, as well as overlapping louvers, has been incorporated into the defendant's Super Guard 2000. Moreover, Marva claims that Lausell willfully and wantonly disregarded Marva's rights in infringing on plaintiff's patent. Marva seeks damages estimated in excess of $5,000,000 along with costs and attorney's fees. Lausell has counterclaimed seeking a decree invalidating Marva's patent and attorney's fees.

Lausell and Marva are major competitors in the Puerto Rico window market, and Lausell believes that Marva has brought this suit in order to conduct discovery into Lausell's sensitive financial and marketing records. For this reason, Lausell now moves the Court to bifurcate under Federal Rule 42(b). Marva has opposed that motion (docket No. 11); Lausell has replied to Marva's opposition (docket No. 15); Marva has rejoined Lausell's reply to Marva's opposition (docket No. 18); and finally, Lausell has surreplied to plaintiff's opposition (docket No. 19).

### II. RULE 42(b)

Rule 42(b) reads as follows:

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."

Fed.R.Civ.P. 42(b). Bifurcation is not and should not be routine, but should be encouraged where experience has demonstrated its worth. *Id.*, advisory committee's note to the 1966 amendment. It is obvious that one trial will generally be more expedient than two—one jury, one opening, one closing, and one direct and cross of each witness. However, many cases present multiple, complicated, and wholly distinct issues. In such cases, bifurcation may promote judicial economy by (1) rendering certain issues moot before vast resources are wasted litigating them, *see Ellingson Timber Co. v. Great Northern Railway Co.*, 424 F.2d 497, 499 (9th Cir.1970); *Victor Co. L.L.C. v. Ortho Organizers, Inc.*, Civ.A. No. 96–2123–GTV, 1996 WL 704404 (D.Kan. Nov. 5, 1996); (2) reducing jury confusion, *see Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 115 (3rd Cir.1992) (upholding a district court's decision to bifurcate to reduce jury confusion in a case involving complicated evidence); and/or (3) facilitating settlement, *see Victor Co.*, 1996 WL 704404 at *2. In still other cases, bifurcation might reduce prejudice. *See e.g. Bath & Body Works v. Luzier Personalized Cosmetics*, 76 F.3d 743 (6th Cir.1996); *Helminski v. Ayerst Laboratories*, 766 F.2d 208 (6th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985). If bifurcation can produce any of these advantages without running a substantial risk of dramatically increasing costs, decreasing expediency, or prejudicing either party, Rule 42(b) provides the Court with the discretion to bifurcate. It is for the proponent of bifurcation to prove the merits of applying the procedure to a given case. *Willemijn Houdstermaatschaapij BV v. Apollo Computer*, 707 F.Supp. 1429, 1433 (D.Del.1989).

The decision to grant or deny a motion for bifurcation under Rule 42(b) is wholly within the sound discretion of the trial court. *González–Marín v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir.1988) (court of appeals unable to find, as of 1989, "a single case in which an appellate court has reversed a decision for failure to bifurcate"). "The decision ordering bifurcation is dependent on the facts and circumstances of each case." *Saxion v. Titan–C–Manufacturing, Inc.*, 86 F.3d 553 (6th Cir.1996). Whatever procedure the court selects under Rule 42(b) "should be conducive to expedition and economy," *Id.; Warner v. Rossignol*, 513 F.2d 678 (1st Cir.1975), and in rendering that determination, "the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077 (Fed.Cir.1986).

## III. THE ARGUMENTS

Having canvassed the sweeping rubric of general Rule 42(b) jurisprudence, the Court can now look at the particular issue of separating damages from liability in this patent infringement case.

The defendant argues that bifurcation could significantly reduce the expense of this litigation by limiting both discovery and the initial trial to a single issue, liability, that is wholly distinct from and may be, depending on the jury's determination, wholly dispositive of the remaining issue, damages. Moreover, the defendant contends that the plaintiff would not be greatly prejudiced by bifurcation. Nothing would be lost to the plaintiff in a bifurcated, as opposed to a unitary, trial—the plaintiff would not be precluded from putting on an equally compelling case in a bifurcated trial. Additionally, Lausell asserts that bifurcation would lessen the complexity and volume of issues on which a jury must render an opinion, making its task less difficult in this, a case involving various and complicated features. Finally, the defendant asserts that it would be prejudiced by a refusal to bifurcate. Specifically, the defendant is concerned that the plaintiff, a competitor in the window market in Puerto Rico, would use discovery

as a means of ferreting out confidential and sensitive financial and marketing information regarding the defendant's business. An order of bifurcation, which would limit discovery to issues relevant to liability, could potentially avoid such an injurious and possibly unwarranted fishing expedition.

In support of its reasoning, Lausell points to *Swofford v. B & W, Inc.*, 34 F.R.D. 15 (S.D.Tex.1963), *aff'd*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965) and its "progeny." This line of cases, if it can be considered a continuum of jurisprudence, stands for the proposition that patent cases are particularly suited for bifurcation. The court in *Swofford* noted:

"In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expenses to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue on appeal without having reached the often time-consuming and difficult damages question. It appears well settled that these factors, or others like them, amply support the exercise of discretion by the trial judge to order separate trials of liability and damages under Rule 42(b)."

34 F.R.D. at 19–20 (citing *Nettles v. General Acc. Fire & Life Assur. Corp.*, 234 F.2d 243, 247 (5th Cir.1956); *O'Donnell v. Watson Bros. Transp. Co.*, 183 F.Supp. 577 (N.D.Ill. 1960); *Lyophile–Cryochem Corp. v. Chas.* *Pfizer & Co.*, 7 F.R.D. 362 (E.D.N.Y.1947); Barron & Holtzoff, Federal Practice and Procedure § 943 (1961); 5 Moore, Federal Practice 1217 (1951)).

As a second, supplementary basis for its contention that bifurcation is warranted in this action, Lausell invokes the Interlocutory Appeals Act, 28 U.S.C. § 1292(c)(2), which provides for an appeal in the United States Court of Appeals for the Federal Circuit from a judgment on liability.[1] As Lausell points out, Congress enacted § 1292(c)(2) with the purpose of:

"Allowing a district court to stay a damages trial pending appeal. As stated by the Supreme Court, 'the object' of the predecessor statute to § 1292(c)(2):

'was to make sure that parties could take appeals in patent equity infringement suits without being compelled to await a final accounting. The reports of Congressional committees on the measure called attention to the large expenses frequently involved in such accountings and the losses they incurred where recoveries were ultimately denied by reversal of decrees on the merits.'

*McCullough v. Kammerer Corp.*, 331 U.S. 96, 98, 67 S.Ct. 1165 [1167], 91 L.Ed. 1365 ... (1947). In footnote 1 [of *McCullough* ] ... the Supreme Court elaborated:

'the House Committee on Patents expressed the belief that the legislation is needed to prevent a great burden of expense of litigants in actions to determine the validity of patents, where an accounting is involved. Under present procedure appeals may be taken from the interlocutory decree upholding the patent but not until a full accounting has been made to the court. Under this bill such appeals can be taken from such interlocutory decree ... so as to obviate the cost of an accounting in the event the case is reversed on appeal.' H.R.Rep. No. 1890, 69th Cong., 2 Sess. 1 (1927).' "

---

1. "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction
... (2) of an appeal from a judgment in a civil action for patent infringement which would

other wise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting."
28 U.S.C.A. § 1292(c)(2) (West 1993).

**4**

*In re Calmar, Inc.,* 854 F.2d 461, 463 (1988). Other courts have interpreted § 1292(c)(2) as a strong recommendation for bifurcation in patent cases. For example, in *Eaton Corp. v. Auburn Gear,* the court stated:

> "Separate trials are particularly appropriate in patent cases because 28 U.S.C. § 1292(c)(2) provides that a finding of liability for patent infringement is an appealable interlocutory order. This allows for easy bifurcation throughout the litigation process. If no liability is determined, the time and expense of trying damages is avoided."

8 U.S.P.Q.2d 1373, 1374 (N.D.Ind.1988).

Marva contends that this case does not present a situation in which bifurcation would prove expedient or help the jury. Instead, Marva argues, bifurcation may very well require the parties to produce overlapping evidence at both trials, rendering it an ineffective method of resolving this case. The plaintiff's reasoning is simple; they bring a two-pronged attack against Lausell's motion. First, bifurcation is congenitally inefficient. In other words, by its nature, it forces a duplication of tasks that increases both time and costs, rendering it unwise under all but compelling circumstances. This case, according to Marva, does not present such circumstances. The patent at issue in this action is not complicated—this "is not a case about high technology devices nor about devices ordinarily known only to highly specialized experts." Plt.'s Opp. to Def.'s Reply at 5. Moreover, because Lausell is questioning the validity of the plaintiff's patent, the issue of commercial success may be invoked during the liability phase of the trial. Because commercial success is predicated upon much of the same evidence that will be used to prove damages, Marva argues, bifurcation will necessitate the introduction of duplicative, overlapping evidence. *See Apollo Computer,* 707 F.Supp. at 1434 ("it is obvious that separate trials in the present case[, where commercial success is at issue] would require plaintiff to present at least a limited amount of evidence twice ... and ... although a minor evidentiary overlap may not strongly militate against bifurcation, it certainly does not favor bifurcation"). Second, the plaintiff argues

that the defendant seeks to force the Court to decide on bifurcation prematurely.

Lausell responds to Marva's opposition by asserting that proof of commercial success relies on different evidence than proof of damages and that to the extent bifurcation creates overlap, it will be minimal:

> "[E]vidence introduced to show 'commercial success' will be less extensive and of a different character from that used to prove damages. The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller."

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 587 F.Supp. 1112, 1116 (D.Del.1984); *Accord Lemelson v. Apple Computer, Inc.,* 28 U.S.P.Q.2d 1412, 1423, 1993 WL 556452 ("detailed financial information is not necessary to prove commercial success and, accordingly ... there is no substantial overlap between issues of commercial success and damages"). This, Lausell contends, undercuts Marva's principle argument—that bifurcation would require the production and analysis of overlapping evidence in both phases of the trial. Moreover, Lausell believes the decision to bifurcate is ripe, because the decision could completely alter the nature of discovery, reducing attorney's and expert's fees and, most importantly from Lausell's point of view, limiting the scope of discovery, thereby protecting its confidential information.

## IV. ANALYSIS

As an initial matter, we reject out of hand Marva's contention that this issue is premature. The Court believes that simplifying discovery would be the major benefit of bifurcation in this case. The streamlining of issues that would result from bifurcation would protect the defendant's financial information and marketing plans, the procurement of which could prove unfairly valuable to the plaintiff for reasons outside the realm of this litigation. Moreover, simply limiting the scope of discovery would as a matter of course save money and time for the litigants

and even for the court to a lesser extent. For that reason, the Court deems it necessary to determine the matter forthwith.

██ The Court's decision hinges on one deceptively simple equation: Is the potential benefit of bifurcation greater or less than the potential detriment of bifurcation? The answer is obfuscated by the fact that the outcome of the liability issue is the key determinant of whether bifurcation serves or disserves efficiency and expediency. Certainly, if the jury returns a verdict for the defendant in the liability phase, bifurcation would have saved time and effort and prevented unnecessary prejudice. Likewise, a jury verdict finding Lausell liable for infringement would necessitate a second round of litigation, rendering many of the gains created by bifurcation null and void.[2] Thus, taking a page from judge Hand's famous algorithm, if we could place relative numeric values on the gains and losses caused by bifurcation, we could multiply those values by the likelihoods of liability and of no liability, respectively, and come to a simple conclusion. Unfortunately, the Court is in no position at this time, given the information before it, to guess at the likelihood that the plaintiff or defendant will prevail at a trial on liability. We must simply conclude that the jury as likely to find that Lausell infringed on Marva's valid patent as they are to find that Lausell did not infringe or that Marva's patent is not valid. That reduces the Court to placing a relative value on the potential gains and losses inherent in bifurcating this action.

Bifurcation produces two undeniable benefits, regardless of the outcome of the liability trial. First, the case, which involves complicated legal and factual issues, would be made simpler both for the Court and the jury or juries. Second, a jury determination that Lausell illegally infringed upon Marva's patent has great potential to induce settlement with respect to damages. The remaining benefits of bifurcation are contingent on the outcome of the trial on liability. Should the

jury in the trial on liability find for the defendant, Lausell, the gains would be as follows: (1) Lausell's confidential and critical information would have been protected and Marva would not have obtained a free fishing license through meritless litigation; (2) the litigation would have been simplified and streamlined considerably and the trial thereby shortened; and (3) the parties' discovery and litigation costs would have been minimized, reducing the price of resolving the plaintiff's claim. On the other hand, should the jury find that Lausell's Super Guard 2000 violates Marva's valid patent, the detriment born of bifurcation would consist of any additional costs or efforts created by separate trials (less the benefits of simplification of the issues and increased prospects for settlement), including: (1) all the requirements of an additional trial, such as jury selection; (2) any duplication of evidence or witnesses in the trial on damages that were already put on during the trial on liability; and (3) any increase in the time frame required to resolve Marva's claim.

In weighing the potential pros and cons of bifurcation, the Court must keep in mind that the movant, Lausell, bears the burden of persuasion. Although Lausell has not presented any concrete evidence to support its contention that discovery of its financial records would necessarily prejudice its business, the Court does not doubt that Lausell, like any business, possesses confidential information that it would prefer to keep from its competitors, the unnecessary dissemination of which would certainly be harmful to its business. Moreover, although the Court is not convinced that the factual or legal issues presented by this case are so complicated as to *necessarily* baffle a jury, the Court is aware that bifurcation would simplify the issues for the jury, and that simplification will certainly help to expedite the jury's task. Regardless of these first two benefits, which are both difficult to quantify, the most apparent potential benefit intrinsic to bifurcation is the obviation of nearly half of the work involved in this case—proving damages—that

---

2. Even if the jury in the first trial were to find that Lausell's Super Guard 2000 infringed on Marva's valid patent, bifurcation would serve to simplify the issues for the jury in both cases. Moreover, bifurcation would encourage settlement, because a party found liable for infringement may be moved or persuaded to settle.

would result if the jury found for Lausell at the trial on liability. Additionally, as the Court has already noted, even if the jury found that Lausell infringed on Marva's patent, we believe that the potential for settlement would dramatically increase, and the trial on damages might not even be necessary following a jury verdict for the plaintiff at the first trial.

Countervailing the inevitable and quiescent benefits is the potential inconvenience of holding two trials as opposed to one. Two trials, as the Court has already noted, will inescapably be less expedient than two, all else being equal. Certain elements of a trial will have to be duplicated and absorb the resources of the Court and the parties— striking the jury and giving opening statements and summation. The repetition of these requirements, however, create a real but limited additional inconvenience. A jury can be selected in a matter of hours, and opening and closing statements likewise consume only short periods of time. Of greater concern, however, is the potential duplication of evidence and/or witnesses. According to the plaintiffs, the litigation of this action will touch on two issues in particular that may create duplication of evidence and/or witnesses: willfulness and commercial success. Willfulness constitutes one possible basis for a finding of exceptional circumstances that would implicate the award of attorney's fees under 33 U.S.C. § 285.[3] *See Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048 (Fed.Cir.1994) (in the absence of wilfulness, an award of attorney's fees would not stand); *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117 (Fed.Cir.1993) (willfulness of infringement is sufficient basis for an award of attorney's fees) The plaintiffs cite the opinions of several courts that have grounded their decisions not to bifurcate patent cases on the fact that a determination of willfulness for the purposes of attorney's fees would require duplication of evidence. For example, the court in *THK America, Inc. v. Nippon Seiko K.K.* concluded:

"Whether infringement is willful is a question of fact. A willfulness determination,

that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's deliberate copying of the ideas or designs of the inventor, the infringer's knowledge of the inventor's patent rights, any good faith belief of invalidity or noninfringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant."

141 F.R.D. 463, 21 U.S.P.Q.2d 1705 (N.D.Ill. 1991). Likewise, in *Remcor Products Co. v. Servend International, Inc.,* the same district court found that:

"Separate trials on the issues of liability and willfulness would not promote the interests expressed in Rule 42. Rather than furthering convenience and judicial economy, separate trials would result in duplication of effort due to the overlapping evidence required to establish both liability and willfulness. *See Keyes Fibre Co. v. Packaging Corp. of America,* 763 F.Supp. 374, 375 (N.D.Ill.1991) ("The evidence relating to [defendant's] state of mind when it committed the infringement, which is clearly relevant to damages, cannot be neatly separated from the underlying liability issue of whether the patent was infringed upon in the first place."); *Kimberly-Clark Corp. v. James River Corp.,* 131 F.R.D. 607, 609 (N.D.Ga.1989) (The willfulness determination 'is a finding of fact inextricably bound to the facts underlying the alleged infringement'). In addition, a single trial would prevent the parties from bringing the same witnesses back into court a second time to elicit the same testimony, reducing undue delays, expense and inconvenience to all parties involved in this litigation."

33 U.S.C.A. § 285 (West 1984).

---

3. "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

No. 93 C 1823, 1994 WL 594723, at *1 (N.D.Ill. Oct.28, 1994).

The Court finds the plaintiff's argument that—separate trials will create duplicative evidence regarding willfulness—to be misplaced. Lausell does not seek to separate the issues of liability from willfulness. The decisions cited by Marva on this point addressed the bifurcation of patent cases into separate trials on willfulness. In patent cases, the defendant often seeks to preclude evidence of its state of mind during the plaintiff's case on liability out of the fear that such evidence will unfairly influence the jury's determination of infringement. Here, the Court sees no reason why the jury, in fashioning its decision on the issue of liability could not also make a determination of willfulness. Allowing the jury in the first trial to settle the issue of willfulness, and any other factors pertaining to the existence or nonexistence of exceptional circumstances meriting the award of attorney's fees that are bound up in the liability aspect of this action, will obviate the need to duplicate efforts and evidence with respect to those issues.

Marva's better argument that bifurcation would create the need for duplication of evidence involves the issue of commercial success. Under 35 U.S.C. § 103,[4] a patent may not issue for an invention that would be obvious from the prior art to a person of ordinary skill in the art to which the invention pertains. In this action, Lausell has

counterclaimed, seeking a decree invalidating Marva's patent. Among other bases for invalidation, Marva argues that the patent at issue is invalid because it fails the nonobviousness requirement. The defendant's argument regarding obviousness pertains to our discussion of bifurcation because proof of commercial success serves to dispel arguments that a patent is invalid for failure to satisfy the obviousness component of patentable inventions. In re GPAC Inc., 57 F.3d 1573 (Fed.Cir.1995). The reasons for this are quite clear—where an invention meets with substantial commercial success, that success tends to prove that consumers desire it, creating an inference that if it were an obvious invention and one that consumers desire, it would have been developed and marketed already.[5]

The plaintiff correctly points out that other courts have relied on the fact that proof of commercial success and damages require overlapping evidence. In Apollo Computer, the district court addressed an almost identical question—whether to separate a patent infringement case into separate trials of liability and damages. We quote at length:

"As defendant points out, this Court has previously observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues [citations omitted]. However, the fact that many patent cases are conducive

4. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.A. § 102 (West 1984).

5. While commercial success is relevant to validity, and evidence tending to prove commercial success would certainly be admitted during the liability phase of the trial of this infringement claim, the Court notes the secondary nature of the evidence. See Newell Companies, Inc. v. Kenney Mfg. Co., 864 F.2d 757, 768 (Fed.Cir.1988). The court in Newell Companies noted that although commercial success may be considered in determining obviousness, it does not control the obviousness conclusion, quoting EWP Corp. v. Reliance Universal Inc., 755 F.2d 898, 908 (Fed.

Cir.), cert. denied, 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985):

"In reaching our conclusion that the invention claimed would have been obvious, we have considered the evidence and arguments pertaining to the so-called 'secondary considerations' such as commercial success, licensing, adoption by the industry, etc. Upon full consideration of all the evidence, we remain convinced that it presents a clear and very strong case of obviousness based on admissions and the teachings of the new references above considered."

Analogizing the obviousness claim in front of them to the one at issue in EWP Corp., the Newell Companies court stated that "although the record shows a highly successful product, the record also establishes such a strong case of obviousness based on admissions and the teachings of the prior art ... that the objective evidence of nonobviousness does not persuade us to reach a contrary conclusion."

to bifurcation is simply irrelevant here ... Even where bifurcation has been found to promote judicial economy, this Court has refused to order separate trials if bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. [citations omitted]. In sum, a court must take into account the overall equities' of the case in ruling on a motion to bifurcate. [citations omitted].

Plaintiff argues that bifurcation would be improper for the simple reason that the issues concerned are too tightly interwoven to be tried separately. Specifically, plaintiff protests that if two trials are held, it will be required to present the same testimony and documentary evidence twice.

This Court has stated in the past that an overlapping of issues is significant to the decision whether to bifurcate. [citations omitted]. The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials. [citations omitted].

At the heart of plaintiff's overlap argument is the issue of the admissibility of financial information regarding defendant's sales performance. Plaintiff correctly points out that evidence of defendant's 'commercial success' is a relevant secondary consideration in a determination of obviousness under 35 U.S.C. section 103. [citations omitted]. and [sic] it is undisputed that such evidence will be considered by a court assessing damages. Thus, plaintiff protests, bifurcation would require it to present the same evidence at both trials. [footnote omitted]. Defendant disputes the existence of any significant evidentiary overlap in this case. [citations omitted]. defendant [sic] contends that the evidence of its past financial performance to show commercial success will be less extensive and of a different character than that used to prove damages ... The Court acknowledges that the issue of commercial success is 'not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the product is, broadly speaking, an accepted product and big seller.' *Paine, Webber,* 587

F.Supp. at 1116. Nevertheless, it is obvious that separate trials in the present case would require plaintiff to present at least a limited amount of evidence twice; and notwithstanding defendant's representations to the contrary, although a minor evidentiary overlap may not strongly militate against bifurcation, it certainly does not favor bifurcation.

707 F.Supp. at 1433–1434; *see also THK America, Inc. v. NSK Co. Ltd.,* 151 F.R.D. 625, 629 (N.D.Ill.1993); *Mellon v. Beecham Group PLC,* 17 U.S.P.Q.2d 1149, 1153–1155, 1991 WL 16494 (D.N.J.1991). The plaintiff would have this Court follow the reasoning of these cases.

The defendant, however, argues that even if holding two trials require duplication of some evidence, that evidence would be minimal and the resulting increase in costs outweighed by the potential increased expediency created by bifurcation. In support of its argument, the defendant cites *Paine, Webber,* in which the court stated:

"the evidence introduced to show commercial success will be less extensive and of a different character from that to prove damages. The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted produce and a big seller. [citations omitted]."

587 F.Supp. at 116.

In this case, the Court finds that the defendant makes the better argument. The potential gains of bifurcation are considerable for both parties, and potential detriments are mild. If the Court bifurcates this case into two trials, there is a strong possibility that only the first trial will be necessary. A jury verdict in favor of Lausell at the close of the first trial would exterminate the need for the damages phase, and a verdict in favor of Marva could well lead to a settlement. If either scenario were to prevail and the second trial become unnecessary, the savings to both parties and the court would be substantial—discovery and litigation costs would be

dramatically reduced, and the issues tried by the Court streamlined. Moreover, if the defendant prevails on the issue of liability, its asserted interest in protecting its confidential documents from discovery on the issue of damages would be vindicated. Regardless of the outcome of the first trial, bifurcation would simplify the responsibility of the jury in both trials, and notwithstanding the simplicity of the patent, litigation in the field of patents raises both legal and factual issues difficult for the layperson to grasp.

The potential detrimental impact of bifurcation can not be classified as severe. In the worst case scenario, given a bifurcation order, the disposition of this action would require two complete trials, the duplication of some evidence, and the recalling of several witnesses at the second trial. However, because both parties reside in Puerto Rico, a second trial does not create the potential for enormous additional costs. The witnesses who could be forced to testify at both trials and the evidence that the parties could be forced to introduce at both trials are located in Puerto Rico.[6] Furthermore, the Court can not divine how bifurcation would prejudice Marva in this action. Marva has given no evidence that bifurcation will do so, other than by delaying resolution of its claim. However, to the extent that delay harms Marva, its harm could be remedied at the damages phase. Actually, bifurcation has the potential to save Marva substantial litigation fees, just as it does for Lausell.[7] In conclusion, after weighing the potential benefits and detriments that bifurcation would create in this case, the Court has determined that bifurcation will serve the interests of expediency and justice, and therefore **GRANTS** the defendant's motion.

Pursuant to its grant of Lausell's motion, the Court hereby **ORDERS** that discovery will be limited to facts bearing on the issues of the patent's validity, Lausell's infringement of that patent, and Lausell's state of mind in engaging in the alleged infringement. The trial of this case will be heard in two parts. The first trial, as set at the Initial Scheduling Conference, will be held on **June**

6. The parties have not informed the Court of the location of all of the witnesses they intend to call. However, common sense tells us that the witnesses that might have to be called at both trials are those with knowledge of the allegedly infringing products' commercial success. Because both parties make their home in Puerto Rico, we conclude logically that such witnesses also reside on the island.

7. This case can be distinguished from most of those cited by Marva. For example, in *Apollo Computer*, the party seeking bifurcation apparently based its motion solely on the argument that bifurcation would simplify the issues for the factfinder, but because the issue was to be argued to the court, the court considered the movant's argument less compelling than it would have in a jury trial. The *Apollo Computer* court did not address any additional basis set forth by the moving party and found the justifications for bifurcation to be flimsy. In *THK America,* the Court was persuaded to deny the motion for bifurcation because the litigation was "foreign-based," and the potential increase in costs from bifurcation was enormous:

"Virtually all of the documents are in the Japanese language. Translators galore are employed by both sides to translate business and corporate records, patents, and other technical documents from the Japanese language to English. Perforce, the disruption to the normal flow and routine of the businesses of the litigants caused by the substantial document production was and remains enormous, as must be the expense in terms of manpower, time, and money. Because much of the evidence and many of the witnesses were located in Japan.

Defendants admit that discovery on the damages issue will be significant and substantial as it will involve thousands and thousands of documents to determine the economic and the cost-accounting factors that go into a determination of damages assuming damages are predicated on a theory of lost profits ... The parties have a discovery network in place. Under defendants' first bifurcation motion, the parties would have been required to dismantle this network, conduct a several week jury trial on liability issues and, if the plaintiff were successful, re-create another discovery network for a separate and subsequent damages trial by a different jury ... The costs of flying in witnesses from Japan to Chicago, Japanese–English translators from who-knows-where to Chicago, and battalions of attorneys from New York to Chicago, with reinforcements of local Chicago counsel, for trial, plus the costs of meals and lodging for the same will be enormous. The burden on the limited public resources, which the trial court represents, in terms of trial time and disruption of trial calendar and caseload, will be substantial."
151 F.R.D. at 632–633. The case at bar presents none of the difficulties which concerned the court in *THK America.*

30, 1997, at 9:00 a.m., and the Pretrial Conference, also set at the Initial Scheduling Conference, will be held on **June 23, 1997, at 2:00 p.m.** At the conclusion of the first trial, if the jury determines that Lausell indeed infringed upon Marva's valid patent, the Court and the parties will meet to schedule discovery pertaining to damages and the second Pretrial Conference and Trial.

IT IS SO ORDERED.