FDIC v. Nash                          CV-97-187-JD  09/25/98
              UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Federal Deposit Insurance Corp.

     v.                            Civil No. 97-187-JD

Gerald Q. Nash, et al.


                           O R D E R


     The Federal Deposit Insurance Corporation ("FDIC") as

receiver of New Bank of New England, N.A. brought suit to collect

a loan of $10,000,000 made by the bank to TNK Associates and

guaranteed by TNK's partners, defendants Gerald Q. Nash and

William Korsak.[1]  The defendants brought three counterclaims

alleging breach of contract, breach of the duty of fair dealing,

and seeking specific performance of provisions of an agreement

between the parties for release of collateral.  The defendants

have moved to compel discovery that the FDIC contends is

protected by privilege.  The current discovery issues are

resolved as follows.

_____

     [1]The third partner, Samuel Tamposi, is now deceased.

Background[2]

In response to the defendants' request for production of documents, the FDIC made documents available for review at its Franklin, Massachusetts, office. Counsel for defendants reviewed documents there in September 1997. Included in the documents for review were a letter dated December 1, 1994, from the FDIC's local trial counsel, Steven Solomon, to the FDIC; a legal opinion about recovery from the Tamposi estate dated August 21, 1996, written by the FDIC's senior litigation attorney; and an opinion letter dated August 16, 1996, from local counsel for the FDIC in Florida about recovery from the Tamposi estate. The defendants' counsel tabbed the three described documents with others for production. The FDIC produced copies of the last two documents but not the December 1, 1994, letter, and provided a privilege log including the two produced documents.

Despite some further document production, the defendants remained dissatisfied with the FDIC's compliance with the discovery request and moved to compel. With encouragement from the court, the parties continued their efforts to resolve the matter. During a document review meeting on March 23, 1998, each of the three documents originally reviewed in September 1997 were

_____

[2]Background information is taken from the parties' memoranda addressing the pending discovery issues.

again made available for review and the FDIC also permitted the defendants' counsel to examine a letter from FDIC local counsel dated October 23, 1997, discussing discovery issues and the defendants' claims against the FDIC. On March 25, 1998, the FDIC produced copies of all three documents, the first page of the October 27 letter, and copies of other documents which had not been previously produced. Since then, the FDIC has submitted two additional privilege logs.

The depositions of Robert Bender and Susan Draper were taken on March 26, 1998. Bender and Draper were former employees of RECOLL Management, Inc., a company that provided services for the FDIC and negotiated the release of collateral agreement with the defendants. Counsel for the FDIC met with Bender and Draper just prior to the deposition. In the course of the deposition, the defendants' counsel asked Draper and Bender about their pre-deposition meetings with the FDIC's counsel. The FDIC objected on grounds of work-product privilege and advised them not to discuss the substance of their discussions.

After meeting with counsel for the parties on April 3, 1998, about continuing discovery issues, the court issued a procedural order directing plaintiff to file a privilege log, with the referenced documents, and to provide a copy of the log to the defendants. The defendants were given a date by which to respond

3

to the privilege log.  Both sides were instructed to file memoranda on the issue of the work product privilege as it applies to the deposition witnesses.

Discussion

The FDIC continues to assert privileges to protect documents listed in its most recent privilege log.  The FDIC also asserts that the conversations between its counsel and witnesses Robert Bender and Susan Draper are protected pursuant to Federal Rule of Civil Procedure 26(b)(3) to the extent the communications revealed counsels' opinions, mental impressions, or theories about the case.  The defendants contend that the FDIC has waived all or substantially all of the privileges asserted in the privilege log and that Rule 26(b)(3) does not protect the FDIC's counsels' communications with Draper and Bender.

A.  Privileges Asserted in the Log

The FDIC invokes attorney-client, "ordinary" work-product, and opinion work-product privileges to justify withholding 218 documents listed in its privilege log.  A party asserting attorney-client or work-product privileges bears the burden of establishing the applicability of the privilege.  See Town of Norfolk v. U.S. Army Corps of Eng'rs, 968 F.2d 1438, 1457 (1st

Cir. 1992); <u>Digital Equip. Corp. v. Currie Enter.</u>, 142 F.R.D. 8, 15 (D. Mass. 1991). An assertion of privilege alone is insufficient to carry the burden as the party seeking the protection of privilege must provide sufficient information to allow the court to make a reasoned judgment on the privilege claim. <u>See</u> <u>Klonoski v. Mahlab</u>, 953 F. Supp. 425, 432 (D.N.H. 1996) (citing J.M. Moore & J.D. Lucas, Moore's Federal Practice ¶ 26.11[1] (1994)); <u>Jones v. Boeing Co.</u>, 163 F.R.D. 15, 17 (D. Kan. 1995).

1. <u>Attorney-Client Privilege</u>

To show that a document is protected by attorney-client privilege, the party asserting the privilege must show: (1) that the party was or sought to be a client of the attorney; (2) that the party sought legal advice from the attorney in his capacity as an attorney; (3) that the document in question includes confidential communication related to legal advice or opinion; and (4) that the protection of the privilege was not waived. <u>See</u> <u>United States v. Massachusetts Inst. of Tech.</u>, 129 F.3d 681, 684 (1st Cir. 1997); <u>Town of Norfolk</u>, 968 F.2d at 1457; <u>Savoy v. Richard A. Carrier Trucking, Inc.</u>, 178 F.R.D. 346, 351 (D. Mass. 1998). The FDIC asserts attorney-client privilege to protect all or parts of sixty-six documents listed in the privilege log, but

5

the defendants contend that the FDIC waived the privilege as to all potentially protected documents by disclosing some potentially protected attorney-client communications in documents produced in discovery.

"It is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege." Texaco Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867, 883 (1st Cir. 1995). Disclosure of privileged communication in one document generally constitutes a forfeiture of the privilege as to all other communications on the same subject. Id. at 883-84; see also Massachusetts Inst. of Tech., 129 F.3d at 688. When an opposing party alleges a specific disclosure, the party asserting privilege, the FDIC here, bears the burden of showing that the privilege has not been waived by the disclosure. See Id. at 686.

The FDIC is correct that the letter dated August 16, 1996, from John Stump to Keith Taggart and Taggart's memorandum to Gordon Muir, dated August 21, 1996, both concern the legal opinion of Florida lawyer, John Stump, about the FDIC's rights to pursue a claim against the estate of Samuel Tamposi. The December 1, 1994, draft letter from Steven Solomon to Susan Divney (RECOLL) discusses the "time, expense, and likelihood of success" of collection proceedings against Tamposi's estate.

Two other documents, however, cover subject matter with

seemingly broader implications than the FDIC recognizes in its memorandum.  Solomon's October 23, 1997, letter to Gordon Muir discusses the current discovery dispute with the defendants, summarizes the results of Solomon's inquiry into RECOLL's contacts with the FDIC about the agreement to release collateral, and discusses the FDIC's theory about TNK's outstanding debt and whether the amount of outstanding debt was compromised by agreement with RECOLL.  The memorandum from Gordon Muir to Earl Hested dated December 18, 1997, also discusses the amount of the TNK debt, TNK's offer to settle the debt, the FDIC's potential counter offer, a recommendation on TNK's offer, and the likelihood of recovering the debt in this litigation.

Without establishing the scope and limits of the disclosed subject matter, the court's preliminary review of the log indicates that although the privilege was probably not waived as to all communications in every document, subject matter in the withheld documents pertains to the subjects already disclosed. The FDIC seems to concede as much in the last paragraph of its memorandum, although it did not specify which documents or communications within documents would remain protected if, as is the case, communications on the same subjects as the disclosed documents are not protected by privilege.

Given the FDIC's underestimation of its disclosure of

7

privileged communications, the FDIC's asserted privilege for withheld documents and communications is overbroad. The FDIC shall release all documents containing communications on the same subjects as were previously disclosed. The FDIC shall also file an amended privilege log addressing which, if any, communications are protected by attorney-client privilege that was not forfeited through disclosure of the same subject matter.

2. Work Product Privileges

The FDIC asserts "ordinary" or "opinion" work product privileges for about forty of the documents listed in the privilege log. The FDIC's memorandum on pending discovery issues does not discuss the application of the work product privilege to the listed documents. The defendants assert that all work-product privileges were waived essentially for the same reasons as the attorney-client privilege ignoring the substantial differences in analysis necessary to determine waiver in each case. See Mass. Inst. of Tech., 129 F.3d at 687 (contrasting analysis for attorney-client privilege and work product protection). The parties have provided insufficient information for a reasoned application of the work product doctrine to the withheld documents.

Alternatively, the defendants contend that at least the

8

documents containing communications to RECOLL employees forfeited work product protection by disclosure to a potential adversary. See id. The effect of disclosure of attorney work product information to RECOLL employees is addressed in the next section.

B.  Work Product Privilege – Deposition Witnesses

At the March 26, 1998, deposition the FDIC objected on grounds of work product privilege to all of the defendants' counsel's questions about the substance of the FDIC's attorneys' discussions with the deponents, Susan Draper and Robert Bender. The FDIC has modified its position now asserting a privilege only as to "opinions and questions communicated by the FDIC attorneys." The defendants object to the FDIC's limited assertion of privilege on grounds that work-product protection was waived and that the work product doctrine does not protect oral discussions.

The attorney work product doctrine protects "the files and the mental impressions of an attorney . . . reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." Hickman v. Taylor, 329 U.S. 495, 510-511 (1947). Federal Rule of Civil Procedure 26(b)(3) provides a codified narrower version of work product protection allowing

9

discovery of protected "documents and tangible things" only upon a showing of need.[3]  Oral communications of attorney work product, although not included within the work product doctrine of Rule 26(b), are protected by the broader scope of federal common-law work product doctrine under Hickman.  See, e.g., United States v. One Tract of Real Property, 95 F.3d 422, 428, n.10 (6th Cir. 1996); Maynard v. Whirlpool Corp., 160 F.R.D. 85, 87 (S.D.W.Va. 1995); Russell v. General Electric, 149 F.R.D. 578, 580 (N.D. Ill. 1993).  Unlike the attorney-client privilege protecting confidentiality, the work product doctrine protects an attorney's trial preparation from adversaries.  See Westinghouse v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991).

---

[3] Rule 26(b)(3) provides as follows:

**Trial Preparation:  Materials.**  Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

10

1.  <u>Forfeiture of Protection</u>

Disclosure of mental impressions, trial strategy, or other information ordinarily protected as work product to an actual or potential adversary forfeits protection.  <u>See</u> <u>Massachusetts Inst. of Tech.</u>, 129 F.3d at 687.  In addition, disclosure to a third party that substantially increases the likelihood that protected information would be revealed to an adversary forfeits work product protection.  <u>See, e.g.</u>, <u>Magee v. Paul Revere Life Ins. Co.</u>, 172 F.R.D. 627, 640 (E.D.N.Y. 1997); <u>In re Imperial Corp. of America</u>, 167 F.R.D. 447, 454 (S.D. Cal. 1995).  To share work product information without risk of forfeiture, the transferor and transferee must share common interests in the litigation against a common adversary although they need not be co-parties.  <u>See</u> <u>Information Resources, Inc. v. Dun & Bradstreet Corp.</u>, 999 F. Supp. 591 (S.D.N.Y. 1998).

The defendants argue that RECOLL and its employees are potential adversaries of the FDIC so that disclosure of work product information to Draper and Bender, former RECOLL employees, constitutes forfeiture of work product protection. The defendants' theorize that because RECOLL's authority to reach agreement with the defendants on the FDIC's claims is a key issue in this case, if RECOLL approved a settlement with apparent authority but without actual authority from the FDIC, the FDIC

11

may bring claims against RECOLL and its employees, including Bender and Draper, who were involved in the settlement. The FDIC describes RECOLL as an independent contractor employed by the FDIC but does not address the determining issue of whether RECOLL is the FDIC's potential adversary in this case.

The defendants' theory may prove prescient if the defendants are successful in gaining enforcement of their interpretation of the release of collateral agreement against the FDIC. When the FDIC attorneys talked with RECOLL former employees Draper and Bender in March 1998 just before their depositions, however, the FDIC, RECOLL, and the former employees shared a common interest in disproving the defendants' interpretation of the agreement. As long as the FDIC is successful against the defendants, the potential adversarial claims the defendants suggest would develop among RECOLL, its employees, and the FDIC will not exist. For purposes of this litigation, therefore, the FDIC, RECOLL, and its employees are aligned with the defendants as their common adversary.[4] That being the case, the FDIC's attorneys'

---

[4]The defendants do not suggest that either Bender or Draper were potential FDIC adversaries outside of their employment with RECOLL, nor do they indicate any greater likelihood that Bender and Draper would reveal work product information to adversaries. The defendants have not argued that because Draper and Bender are former RECOLL employees disclosure to them would substantially increase the likelihood of disclosure to other adversaries. In the context provided, therefore, the court assumes that the witnesses' interests are aligned with their former employer,

disclosure of work product information to Bender and Draper did not cause a forfeiture of protection for that information.

2.  Compelling Need

The defendants argue alternatively that they have a compelling need to inquire about facts "which came to light during the FDIC's discussions with Bender and Draper."  Work product protection does not apply to factual information known to a witness that was not prepared in anticipation of litigation. See Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 15 n.6 (D. Mass. 1993).  Thus, no compelling need is necessary to inquire about facts known by Draper and Bender that would not reveal the mental impressions, conclusions, opinions, or legal theories communicated to either of them by the FDIC's attorneys.

## Conclusion

The FDIC shall release documents not protected by attorney-client privilege and file an amended privilege log in light of its waiver of attorney-client privilege on the same subjects as

_____

RECOLL, that, as the defendants suggest, they would also face claims by the FDIC if the defendants are successful here, and that they are not merely disinterested third-party fact witnesses in this case.

were disclosed in the documents as discussed above.  To the extent the FDIC intends to assert work product protection for any documents now listed in the privilege log, to carry its burden, the FDIC shall support assertions of work product protection in an accompanying <u>in camera</u> memorandum that provides sufficient particularity as to each communication or document to permit the court to make an informed and reasoned decision about application of the doctrine.  **The FDIC shall file an amended privilege log and supporting memorandum or produce all withheld documents to the defendants within thirty (30) days of the date of this order.**

If the defendants choose to again depose Susan Draper or Robert Bender on matters previously improperly precluded by the FDIC's objections, the FDIC shall bear all costs of those two depositions.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

September 25, 1998

cc:   Steven A. Solomon, Esquire
      Frank M. Cadigan Jr., Esquire
      Daniel W. Sklar, Esquire

14