**TRUSTEES OF the UNITED MINE WORKERS OF AMERICA 1974 PENSION PLAN, Plaintiffs,**

v.

**MORRISON KNUDSEN CORP., Defendant.**

**Civil Action No. 95–2078(PLF).**

United States District Court,
District of Columbia.

June 12, 1996.

---

Larry D. Newsome, UMWA Health & Retirement Funds, Office of the General Counsel, Washington, DC, for plaintiffs.

Mary Lou Smith, Howe, Anderson & Steyer, P.C., Washington, DC, for defendant.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

The Trustees of the United Mine Workers of America ("UMWA") 1974 Pension Plan have brought this action against Morrison Knudsen Corporation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1368, *as amended by* the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461. Plaintiffs allege that Morrison Knudsen withdrew from the UMWA multiemployer pension plan in August 1991 and failed to make interim withdrawal liability payments as required under 29 U.S.C. §§ 1399(c)(2) and 1401(d). Defendant has counterclaimed for declaratory relief. Before the Court is Plaintiffs' Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Kanawha Mining Company, Inc., was a Nevada corporation engaged in surface mining in West Virginia. Its employees were members of the United Mine Workers of America and Kanawha was a signatory to the National Bituminous Coal Wage Agreements of 1984 and 1988 under which it was obligated to contribute to the UMWA 1974 Pension Plan (the "Plan"). Def.'s Opp'n at 3–4; Pls.' Statement of Material Fact ("Pls.' Stmt") ¶¶ 2–3. Morrison Knudsen is a Delaware corporation that, until December 31, 1991, owned 100 percent of Kanawha. Def.'s Controversion of the Plaintiffs' Statement of Material Facts ("Def.'s Controversion") ¶ 6; Pls.' Stmt. ¶¶ 4–5. Aside from its relationship with Kanawha, Morrison Knudsen was not itself a participating employer in the Plan. Pls.' Stmt ¶ 4.

In August 1991, contributions for Kanawha's covered operations ceased being made to the Plan. Affidavit of Dianne M. Duffin ("Duffin Aff.") ¶ 5 (Mar. 13, 1996); Pls.' Stmt ¶ 7; Def.'s Controversion ¶ 7. The Plan mailed letters and questionnaires to Kanawha at its last known address. Duffin Aff. ¶ 5. On October 15, 1992, the Plan received a letter from Morrison Knudsen stating that Kanawha's correct new address was "c/o Mullins, 405 Capitol Street, Suite 607, Charleston, WV 25301." Pls.' Ex. A. The Plan remailed the letters and questionnaires to the new address but did not receive the information requested. The Plan subsequently determined pursuant to its duties under 29 U.S.C. § 1381 that Kanawha had ceased covered operations and had withdrawn from the Plan as of August 1991. Duffin Aff. ¶ 6; Pls.' Stmt ¶ 8.[1]

---

1. Defendant disputes the Plan's conclusion, arguing that other members of Kanawha's control group made a payment to the Plan which precludes a finding that Kanawha withdrew in August 1991. Defendant relies on the affidavit of Burton Fulton for this proposition, however, and Mr. Fulton states only that in the course of later bankruptcy proceedings Kanawha's then-control group made certain payments to plaintiffs. Affi-

On December 31, 1991, Morrison Knudsen sold its 100 percent interest in Kanawha to Mullins Coal Company. Agreement Between Mullins Coal Co., Inc., Morrison Knudsen Corp. and Kanawha Mining Co., Inc. ("Sale Agreement"), Def.'s Ex. D. The Sale Agreement provided, *inter alia*, that Morrison Knudsen "shall have no responsibility for any withdrawal liability under the Wage Agreement related to employees terminated prior to the date of this agreement, and [Mullins] shall remain solely responsible for such liability." Sale Agreement § 4.4(2)(c).

On January 29, 1993, the Plan notified Kanawha by letter of its withdrawal liability. The Plan subsequently learned that Morrison Knudsen had sold its Kanawha stock. Duffin Aff. ¶ 8. On May 31, 1994, the Plan forwarded a copy of the January 29, 1993 letter to Morrison Knudsen. On August 25, 1994, Morrison Knudsen requested that the Plan review its determination of withdrawal liability; the Plan did not formally respond. Duffin Aff. ¶ 9. On December 27, 1994, Morrison Knudsen filed a demand for arbitration. *See* 29 U.S.C. § 1401.

On December 22, 1992, Mullins Coal Company filed for bankruptcy and plaintiffs filed a claim against it for Kanawha's withdrawal liability payments. Def.'s Ex. A. As part of the reorganization plan, administrative priority was given to a sum of $3,315,000 owed to the UMWA Pension Plan to be classified as a Class 4 claim. Another sum ($2,012,117.88) was classified as a general unsecured debt to be paid as a Class 9 claim. *In re Hawks Nest Mining Company*, Case No. 92–21140 (Bankr.S.D.W.Va. Nov. 8, 1994), Plan of Reorganization § 3.04, Pls.' Ex. 3; Def.'s Ex. B. This Class 9 general unsecured debt included the Kanawha withdrawal liability payments. Def.'s Ex. B; Pls.' Reply Mem. at 11. To date, payments of $160,000 have been made to plaintiffs under the reorganization plan, Pls.' Reply at 11 n. 8; Fulton Aff. ¶ 6, although the parties dispute the proper allocation of these funds.

## II. DISCUSSION

### A. Common Control Under ERISA

■ Employers that withdraw from pension funds are liable for their proportional

davit of Burton N. Fulton ("Fulton Aff.") ¶ 6–7

share of unfunded vested benefits. 29 U.S.C. § 1391; *see Connors v. Incoal, Inc.*, 995 F.2d 245, 248 (D.C.Cir.1993). 29 U.S.C. § 1301(b)(1) states that "all employees of trades or businesses ... which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." Common control is defined by reference to Treasury Regulation 1.414(c), *see* 29 C.F.R. § 2612, that defines trade or business under common control to include "any group of trades or businesses which is ... a 'parent-subsidiary group of trades or businesses under common control' as defined in paragraph (b) of this section." 26 C.F.R. § 1.414(c)–2. Paragraph (b) of the Treasury Regulation defines a parent-subsidiary as "one or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization if ... [t]he common parent organization owns ... a controlling interest in at least one of the other organizations." 29 C.F.R. § 1.414(c)–2(b).

■ Under this standard, Morrison Knudsen and Kanawha were under common control prior to December 31, 1991. Since any enterprise that is a trade or business and under common control with the withdrawing employer is jointly and severally liable for the principal employer's withdrawal liability, *Connors v. Incoal, Inc.*, 995 F.2d at 249, Morrison Knudsen is jointly and severally liable for Kanawha's withdrawal liability.

### B. Date of Withdrawal

■ Defendant asserts that even if it was under common control with Kanawha until December 31, 1991, plaintiffs have not proven that withdrawal actually occurred in August 1991 and that discovery is needed to determine the precise date of withdrawal and whether it took place after December 31, 1991. More specifically, defendant argues that if Mullins Coal in fact made contributions to the plan after Kanawha stopped contributing, then withdrawal did not take place

(Apr. 15, 1996).

until after Morrison Knudsen was out of the control group. Defendant points to no evidence, however, that this actually occurred. Defendant cites the affidavit of Mr. Fulton in support of this claim, Def.'s Statement of Material Fact ¶ 8, but the Fulton affidavit does not state that Kanawha's control group made such payments. Such speculation does not suffice to create a genuine issue of material fact.

■ More importantly, ERISA's statutory scheme requires disputes over withdrawal dates and liability to be arbitrated and further requires, pending arbitration, that employers must make withdrawal liability payments as computed by plan sponsors. 29 U.S.C. §§ 1399 and 1401. ERISA expressly provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1); *see I.A.M. National Pension Fund Plan v. Clinton Engines Corp.*, 825 F.2d 415, 417, 422 (D.C.Cir.1987) ("[A]rbitration reigns supreme under the MPPAA."); *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 814 F.2d 297, 300 (6th Cir.1987); *Combs v. Leishman*, 691 F.Supp. 424, 429 (D.D.C.1988). Although arbitration is an exhaustion requirement and not a jurisdictional one, it is required in all but a very narrow set of circumstances. *I.A.M. National Pension Fund Plan v. Clinton Engines Corp.*, 825 F.2d at 418, 422.

■ ERISA also requires that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determination of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2); *see* 29 U.S.C. § 1401(d). The meaning of these provisions is unambiguous: employers are required to make withdrawal liability payments "during the pendency of any dispute." *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 814 F.2d at 299; *see Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 507 (3d Cir.1992) ("The pay now, dispute later principle of the MPPAA is well established."). Indeed, the D.C. Circuit has made clear that even issues of statutory interpretation must be arbitrated first before they can be raised as defenses to withdrawal liability. *I.A.M. National Pension Fund Plan v. Clinton Engines Corp.*, 825 F.2d at 418, 422. Thus, even if, as defendant argues, a different determination of the withdrawal date could establish that Morrison Knudsen was not in common control with Kanawha at the time of withdrawal, Morrison Knudsen is still required to make interim withdrawal liability payments while the issue of the withdrawal date is arbitrated.

■ Defendant also implies that its withdrawal liability could not accrue until Morrison Knudsen was notified or until it had actual knowledge of its liability. Pls.' Statement of Material Fact ¶¶ 6, 6(b)–(c), 7, 9, 10. Not only does defendant cite no authority for this proposition but Judge Hogan addressed this precise issue when he wrote that such a position "would allow a member of a controlled group to escape liability by selling stock after withdrawal but prior to notice from the pension fund of withdrawal liability, which is exactly the result Congress intended to prevent." *Connors v. Brady–Cline Coal Co.*, 668 F.Supp. 5, 9 (D.D.C.1987). *See* 29 U.S.C. § 1383(e) (date of complete withdrawal is date of cessation of the obligation to contribute).

## C. Bankruptcy Proceedings

■ Defendant notes that plaintiffs have received certain payments pursuant to the Mullins bankruptcy reorganization plan. Although there may be a factual dispute over whether plaintiffs have received any of the withdrawal payments due them, *compare* Def's Controversion ¶ 5(a) *and* Fulton Aff. ¶¶ 6–7 *with* Pls.' Reply Mem. at 10–11, this dispute is immaterial. "The law is clear that discharge of a debtor does not affect the liability on the debt of any co-debtors." *Teamsters Joint Council No. 83 v. CenTra, Inc.*, 947 F.2d 115, 121 (4th Cir.1991) (citing 11 U.S.C. § 524(e)); *see I.A.M. National Pension Fund v. Slyman Industries, Inc.,*

901 F.2d 127, 129 (D.C.Cir.1990) (finding that the bankruptcy of one member of a common control group did not affect the liability of non-bankrupt affiliate). Moreover, even if Mullins' liability were discharged in part, it would be improper for this Court to absolve Morrison Knudsen of its liability at this stage because the correct amount of withdrawal liability, and payments is subject to arbitration. 29 U.S.C. § 1401(d).

### D. Morrison Knudsen's Contract With Mullins Cannot Discharge Morrison Knudsen's Liability

██ Morrison Knudsen also argues that its contract with Mullins relieves it of any liability for withdrawal payments, citing *Combs v. Leishman,* 691 F.Supp. 424 (D.D.C. 1988). *Combs,* however, does not support the proposition that defendant is relieved of liability, but only that a purchaser such as Mullins might be held liable under certain circumstances. More importantly, the Supreme Court has held that an employer cannot contract out of its MPPAA obligations. *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 223–24, 106 S.Ct. 1018, 1025–26, 89 L.Ed.2d 166 (1986).

### E. Relief

Plaintiffs are entitled to the delinquent withdrawal liability payments, interest on the unpaid payments, liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. §§ 1451(e), 1132(g)(2). As of the date of their Motion for Summary Judgment, March 14, 1996, plaintiffs calculated the amount due as follows:

| | |
|---|---|
| 36 delinquent payments | $717,508.80 (April 9, 1993—March 14, 1996) |
| Interest | $86,457.20 (accrues at $172.08 per day) |
| Liquidated Damages | $143,501.76 |
| Attorneys' Fees | to be determined |
| Costs | to be determined |

---

Duffin Aff. ¶¶ 13–16. In light of the passage of time since plaintiffs submitted these calculations and the fact that defendant has not addressed the issue of the amount due, plaintiffs shall recalculate the amount due in light of this Opinion. An Order consistent with this Memorandum Opinion is issued this same day.

SO ORDERED.