Trull v. Volkswagen of America, Inc.  CV-94-15-JD   08/11/97

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Elizabeth Trull, et al.

     v.                              Civil No. 94-15-JD

Volkswagen of America, Inc., et al.


                        O R D E R


     The plaintiffs, David Trull, both individually and as
administrator of the estate of Benjamin Trull, Elizabeth Trull,
and Nathaniel Trull, brought this products liability action
pursuant to the court's diversity jurisdiction against the
defendants, Volkswagen of America, Inc., and Volkswagenwerk, A.G.
The plaintiffs contend, inter alia, that the defendants
negligently designed the 1986 Volkswagen Vanagon, with the result
that several of the plaintiffs suffered serious personal injuries
when their 1986 Vanagon was involved in an accident.  Before the
court is the defendants' motion in limine to exclude certain
evidence due to the alleged spoliation of relevant evidence by
the plaintiffs (document no. 28).

## Background[1]

On February 19, 1991, the plaintiffs were involved in a motor vehicle accident while in their 1986 Volkswagen Vanagon in Conway, New Hampshire. As a result of the accident, David Trull, who was driving and wearing a lap-shoulder belt, received only minor injuries. Elizabeth Trull, the front seat passenger, was ejected from the vehicle and suffered a severe brain injury. Nathaniel Trull, riding in the first row of rear bench seats, was wearing the lap-only belt with which the vehicle was equipped and also suffered a severe brain injury. Benjamin Trull, also riding in the first row of rear bench seats and wearing a lap-only belt, was killed. Although autopsy photographs revealed witness marks on Benjamin Trull's pelvic area, indicating that he was wearing his lap belt at the time of the accident, an EMT who attended to him testified that Benjamin was not wearing a seat belt when he was found in the wreckage. The 1986 Vanagon was not equipped with shoulder harnesses for rear passengers even though most of the defendants' other vehicles for that model year were equipped with rear shoulder harnesses as standard equipment.

---

Because the court resolves the instant motion without a hearing, it considers all genuine disputes of material fact in the light most favorable to the plaintiffs, the parties resisting the exclusion of evidence. In doing so, the court makes no preclusive findings of fact and rules subject to the limitations described infra.

In March 1991, David Trull and his friend David Wood went to recover some unaccounted-for items from the Vanagon where it was being stored. At the time of the visit, Elizabeth was in a coma at Maine Medical Center, Nathaniel was either still in the hospital or had recently been discharged, and Benjamin had been recently interred. David Trull examined the vehicle in an effort "to figure out what had happened," but did not photograph the vehicle at that time. Pls.' Objection to Defs.' Mot. in Limine on Spoliation ("Pls.' Obj."), Ex. A at 85, 98. His inspection revealed that the "female" portion of Elizabeth Trull's seat belt, where the "male" portion of the belt would be inserted, was missing.[2] He has attested that at the time he inspected the Vanagon, the thought that the defendants might be at fault for something "cross[ed his] mind." Id., Ex. A at 130.

The plaintiffs owned the Vanagon until June 7, 1991, when title was transferred to their insurance company. It was apparently destroyed some time in July of 1992, before the defendants got to inspect it and before the lawsuit against them was filed. The Conway police took extensive photographs of the

---

This account was contradicted by Everett Mills, Elizabeth Trull's brother, who also inspected the Vanagon after the accident. Although he stated that he could not be completely sure, his recollection was that the webbing below the female portion of the seat belt was torn.

3

Vanagon, the vehicle with which it collided, and the accident scene but those pictures neither clearly display the seat belts of Elizabeth or Benjamin Trull nor depict the interior area near Nathaniel Trull that might have shown what portions of the vehicle his head struck subsequent to the impact.

David Trull has asserted that the vehicle had been destroyed before he realized that the defendants bore any responsibility for his family's injuries. His family attorney, Barrett M. Hurwitz, ascertained that the vehicle had been destroyed prior to the time that David Trull contacted his counsel in this action. Prior to bringing this products liability action against the defendants, David Trull engaged in other litigation related to the accident, including an action against his health insurer to allow Elizabeth Trull to be treated in a rehabilitation facility and a negligence action against the town of Conway and the state of New Hampshire based upon their failure to take adequate measures to keep safe the roadway in the area of the accident. David Trull also has testified that by November 1991 he had discussed the possibility of bringing a wrongful death claim against someone.

On January 13, 1994, the plaintiffs brought this action, asserting, inter alia, that the defendants are liable under theories of negligent design and strict liability for an unsafe

product. The plaintiffs have advanced several theories in support of their claims and plan to introduce expert testimony in support of those theories. First, the plaintiffs contend that Elizabeth Trull's belt, the female portion of which was anchored to the Vanagon's frame, should have been designed so that the seat and the seat belt were integrated. One of their experts has opined that the belt's failure occurred when the frame of the vehicle deformed during the accident moving the anchor and compromising the belt's ability to restrain Elizabeth Trull. A plaintiffs' expert has expressed the opinion that an integrated design would not have been so compromised. The plaintiffs also contend that, because of the angle of the vehicles in the accident, the main force on them during the accident would have caused the plaintiffs to move forward in the vehicle. Based in part on that assertion, the plaintiffs' experts opine that, had the rear bench seats been equipped with lap-shoulder belts rather than merely with lap belts, the injuries to Benjamin and Nathaniel Trull would not have been as severe as they were.

The defendants' experts dispute these contentions. The defendants allege that the belt did not fail in the manner described by the plaintiffs and contest the validity of the integrated seat design propounded by the plaintiffs. They also have come to a different conclusion about the mechanics of the

impact. A defendants' expert has opined that the primary force on the plaintiffs during the crash would have caused them to move to the side rather than to the front. Based upon this contention, the defendants assert that the existence of lap-shoulder belts in the rear seats would not have provided greater protection for Benjamin and Nathaniel Trull, because shoulder belts do not prevent lateral movement in an accident. The defendants urge that they have been hampered in their efforts to prove their theories in this case because the plaintiffs' Vanagon was destroyed before the defendants' experts had a chance to inspect the vehicle. As a result, the defendants filed this motion, seeking the exclusion on spoliation grounds of the following four types of evidence: lay testimony, in the form of statements by David Trull and David Wood, regarding the post-accident condition of Elizabeth Trull's seat belt; expert testimony based upon lay testimony regarding the post-accident condition of Elizabeth Trull's seat belt; evidence, such as the witness marks found on Benjamin Trull and the report of the EMT that Benjamin did not have his seat belt on when found in the wreckage, suggesting that Benjamin's seat belt broke during the accident; and expert opinion based on the claim that Vanagon rear seats should have been equipped with lap shoulder belts.

6

Discussion

Spoliation is "the intentional, negligent, or malicious destruction of relevant evidence." Townsend v. American Insulated Panel Co., ___ F. Supp. ____, ____, 1997 WL 336992, at *3 (D. Mass. June 17, 1997). In a case brought in federal court pursuant to the court's diversity jurisdiction, the issue is governed by federal law. See Allstate Ins. Co. v. Creative Env't Corp., 28 Fed. R. Serv. 3d 1352, 1357 (D.R.I. 1994); Northern Assurance Co. v. Ware, 145 F.R.D. 281, 283 (D. Me. 1993). If relevant evidence has been destroyed, a range of sanctions, including "dismissal of the case, the exclusion of evidence, or a jury instruction on the 'spoliation inference,'" may be imposed. Vazquez-Corales v. Sea-Land Serv., Inc., 172 F.R.D. 10, 13 (D.P.R. 1997).

Courts have developed a five-factor inquiry to determine whether and what evidentiary sanctions are appropriate in a given situation. See, e.g., Mayes v. Black & Decker (U.S.), Inc., 931 F. Supp. 80, 83 (D.N.H. 1996); Northern Assurance Co., 145 F.R.D. at 283. The factors considered are:

> (1) whether the defendant was prejudiced as a result of [the destruction of evidence]; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was [acting] in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.

7

E.g., Mayes, 931 F. Supp. at 83 (alteration in original).

The plaintiffs claim that seven factors militate against imposing evidentiary sanctions against them in this case:  (1) there is no evidence that the plaintiffs willfully destroyed the Vanagon; (2) there is no evidence that the plaintiffs contemplated a lawsuit against the defendants prior to the Vanagon's destruction; (3) David Trull, who controlled the vehicle before selling it to the insurance company, was not a person experienced in litigation but, rather, a layman attempting to cope with severe stress; (4) plaintiffs' theories in the case involve defects in design and failure to warn rather than manufacturing defects; (5) the vehicle was extensively photographed; (6) the defendants have been able to mount a sophisticated defense; and (7) no expert examined the vehicle on behalf of the plaintiffs.  The defendants argue that they have been prejudiced by the destruction of the very product that is the focus of this product liability action and that bad faith on the part of the plaintiffs is not necessary for the imposition of evidentiary sanctions.

The court considers these arguments in the context of the general application of the five spoliation factors to this case before evaluating the specific evidentiary sanctions requested by the defendants.

8

I.    The Spoliation Factors

The first and most important factor examined by courts in a spoliation analysis is the existence and extent of prejudice to the party who has been deprived of the evidence.  See Headley, 141 F.R.D. at 366.  The plaintiffs contend that the defendants have not been prejudiced by the destruction of the Vanagon.  They point out that the defendants have been able to mount a sophisticated defense to their claims.  They also argue that, because the Vanagon was destroyed before their own experts had a chance to examine it, they have been equally hampered in their preparation of this case, so that they have suffered as much prejudice as the defendants.  The defendants respond that the allegedly defective vehicle is highly relevant in a product liability action and that no measure short of exclusion of the requested testimony can adequately substitute for its absence.

Other courts have rejected contentions similar to that propounded by the plaintiffs.  See, e.g., Headley v. Chrysler Motor Corp., 141 F.R.D. 362, 366 (D. Mass. 1991).  In Headley, the court noted that "[t]he fact that plaintiffs may have been prejudiced by their spoliation does not mean that defendant was and is not prejudiced -- that these equal 'prejudices,' in some manner, cancel each other out."  Id.  The court concluded that by removing the possibility that the defendant could conclusively

9

prove that it was not at fault and thereby converting the case into a "battle of the experts," the plaintiffs had transformed a possible "no win" situation into a "horse race" in which they might prevail. See id. Such a situation, the court found, created actual prejudice against the defendant. See id. But cf. Vazquez-Corales, 172 F.R.D. at 14 (defense not entirely frustrated by destruction of relevant evidence where sufficient evidence survived to allow defendant to develop other theories as to cause of accident). Without the plaintiffs' vehicle, it is impossible to ascertain what the vehicle might have revealed and thus incalculably more difficult to determine the exact extent to which the defendants have been prejudiced. In this case, the court concludes that the defendants have been prejudiced by the destruction of the Vanagon and the mere fact that the plaintiffs may have also been prejudiced does not offset the prejudice to the defendants.

The next factor considered is whether the prejudice to the defendants can be cured. See Mayes, 931 F. Supp. at 83. The plaintiffs contend that any prejudice to the defendants can be cured with an appropriate limiting instruction. While the court may properly consider such a contention, the plaintiffs have not suggested any limiting instructions that might cure the prejudice to the defendants in this case.

The next factor for the court's consideration is the relevance of the evidence that was destroyed. See Mayes, 931 F. Supp. at 83. Here, the product that is the center of a products liability lawsuit has been destroyed. Although the precise usefulness of the vehicle as evidence is now impossible to ascertain, it is undoubtedly highly relevant, inter alia, because it is the focus of the action and "[t]hrough its examination, an expert may very well have been able to determine the cause" of the plaintiffs' injuries. See Allstate, 28 Fed. R. Serv. at 1359. The court finds that, at least as to some of the plaintiffs' claims, the relevance and practical importance of the Vanagon is high.

Another important concern in the spoliation analysis is whether the spoliating party acted in good or bad faith. See Mayes, 931 F. Supp. at 83. The plaintiffs argue that they acted in good faith. Unlike other cases in which evidence was destroyed after due notice to preserve the evidence was provided, see, e.g., Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996); Headley, 141 F.R.D. at 366, in this case the evidence had already passed from the control of the plaintiffs prior to their commencement of the lawsuit. Moreover, the defendants do not contend that the plaintiffs were sophisticated in litigation matters. Although the defendants suggest that the

11

plaintiffs contemplated the possibility of a lawsuit when David Trull went to recover family possessions from the Vanagon, the defendant does not seriously contend that the plaintiffs knowingly allowed the Vanagon to be destroyed because doing so would be advantageous in their lawsuit against the defendants. However, bad faith is not required for the imposition of spoliation sanctions. See Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 447 (1st Cir. 1997). The court finds that, although there are clear indications that the plaintiffs acted negligently in allowing the destruction of the Vanagon, there is no indication that they acted in bad faith.

The last factor weighed by courts in considering sanctions for spoliation is whether it is necessary to discourage abuse in future cases. See Mayes, 931 F. Supp. at 83. However, unlike cases in which parties skilled in litigation allow potentially relevant evidence in a pending or contemplated lawsuit to be destroyed, see, e.g., Allstate, 28 Fed. R. Serv. at 1359-61; Northern Assurance Co., 145 F.R.D. at 283, here the defendants do not assert that the plaintiffs intentionally allowed the destruction of the Vanagon in an effort to improve their litigation position. As discussed supra, the facts of this case provide circumstantial indications that the plaintiffs acted without bad faith, without extensive knowledge of litigation

12

practices, and under the extreme stress of a catastrophic accident. Assuming that an adequate limiting instruction could be crafted to cure any prejudice to the defendants, there is no indication that admitting some evidence about the condition of the Vanagon would encourage others to allow important evidence to be destroyed in future cases. For these reasons, the court finds that there is limited potential for abuse in future cases if this evidence is not excluded entirely.

Having considered generally the five factors relevant in the spoliation context, the court discusses <u>seriatim</u> each of the defendants' specific requests for the exclusion of evidence.


II. <u>Lay Witness Testimony Regarding the Post-Accident Condition of Elizabeth Trull's Seat Belt</u>

The defendants argue that the plaintiffs' lay witness testimony regarding the post-accident condition of Elizabeth Trull's seat belt should be excluded. The plaintiffs argue that: (1) their claim as to Elizabeth Trull is not based on a manufacturing or design defect claim; (2) their expert, who would opine that the Vanagon front seat belt system should have been made with an integrated seat and seat belt, will be subject to cross-examination which will provide the defendants with ample opportunity to rebut the plaintiffs' theory; and (3) other lay

13

testimony tending to support the defendants' theory of the case, i.e., the testimony of Everett Mills that the belt webbing was torn, is available.

Although most cases involving spoliation sanctions concern the exclusion of expert testimony, see, e.g., Mayes, 931 F. Supp. at 84; Allstate, 28 Fed. R. Serv. at 1356, 1362; Northern Assurance Co., 145 F.R.D. at 284, in some cases an appropriate spoliation sanction includes the exclusion of lay witness testimony as to the condition of evidence unavailable at trial because it was necessary to cure the prejudice to the non-spoliating party, see, e.g., Sacramona, 106 F.3d at 448 ("commensurate sanction [for destruction of evidence] might have included an order barring [plaintiff] from [making claims about condition of destroyed evidence]"). As discussed supra, the existence of (1) some evidence supporting the defendants' theory of the case, and (2) material for cross-examination of the plaintiffs' expert, does not cure the prejudice against the defendants. The defendants might have been able to absolve themselves completely of liability in this case based on a thorough expert investigation of the Vanagon. Instead, they have been forced to resort to a "battle of the experts" armed with a small amount of information of questionable reliability.

Despite this, a limiting instruction might still be the

14

appropriate means of curing any prejudice to the defendants.  See Sacramona, 106 F.3d at 448.  Here, however, the parties have not suggested and the court has not been able to ascertain what, if any, limiting instruction would properly cure the prejudice the lay witness testimony regarding the post-accident condition of Elizabeth Trull's seat belt might cause.  Under such circumstances, exclusion of evidence is appropriate.  See id.

Therefore, the court grants the defendants' motion in limine to the extent that it requests the exclusion of lay testimony regarding the post-accident condition of Elizabeth Trull's seat belt.[3]


III. Expert Witness Testimony Regarding the Post-Accident Condition of Elizabeth Trull's Seat Belt

The defendants also argue that expert testimony flowing from lay witness testimony regarding the post-accident condition of Elizabeth Trull's seat belt should be excluded from evidence. Because the court has ruled that an appropriate sanction for the

---

The court's findings on the issue of spoliation are preliminary to the extent that they do not exclude certain testimony, for as other courts have ruled, "if the evidence demonstrates greater prejudice to [the defendants] than the record currently reveals or that [the plaintiffs] deliberately had the [vehicle] dismantled to prevent its inspection, a more severe sanction, including dismissal, may be imposed."  Vazquez-Corales, 172 F.R.D. at 15.

plaintiffs' failure to preserve the Vanagon is the exclusion of lay evidence about the post-accident condition of Elizabeth Trull's seat belt, a fortiori, the plaintiffs are precluded from offering expert opinion testimony based upon excluded lay testimony. Such a result is the only adequate remedy to cure the substantial prejudice against the defendants caused by their inability to examine the Vanagon.

Therefore, the court grants the defendants' motion in limine to the extent that it seeks the exclusion of expert testimony flowing from lay testimony regarding the post-accident condition of Elizabeth Trull's seat belt.

## IV. Evidence Suggesting That Benjamin Trull's Seat Belt Broke in the Accident

The defendants argue that evidence suggesting that Benjamin Trull's seat belt broke in the accident should be excluded. The plaintiffs argue that the significance of whether or not Benjamin Trull's belt broke is low since their claim hinges on the fact that the design was faulty because it lacked a shoulder harness.

Here, the proffered evidence differs in some respects from the lay testimony regarding the condition of Elizabeth Trull's seat belt because, inter alia, it is less central to the plaintiffs' underlying theory of liability and it rests on

16

physical evidence and testimonial evidence from a non-party. Indeed, witness marks on Benjamin Trull tending to show that he was wearing the belt at the time of impact and the fact that he was ultimately found without his belt might give rise to an inference that the belt broke during the accident. Nevertheless, the best evidence of whether the belt broke would still likely be the belt itself. Thus, the court concludes that the defendants are prejudiced by the unavailability of the Vanagon, but notes that the prejudice might be more easily overcome than in the case of lay witness testimony with respect to the post-accident condition of Elizabeth Trull's seat belt. Because the plaintiffs have not suggested a limiting instruction that would adequately cure the prejudice to the defendants, however, the court holds that at this time exclusion of evidence suggesting that Benjamin Trull's seat belt broke in the accident is appropriate.

Therefore, the court grants the defendants' motion in limine to the extent that it seeks the exclusion of evidence suggesting that Benjamin Trull's seat belt broke in the accident.

V.    <u>Expert Opinion Based on Claim that Vanagon Rear Seats Should Have Been Equipped with Lap-Shoulder Belts</u>

Finally, the defendants seek to exclude any expert opinion based on the claim that Vanagon rear seats should have been

equipped with lap shoulder belts.  The defendants argue that the loss of the vehicle has deprived them of an opportunity to find witness marks that might have provided some indication as to how the plaintiffs moved about in the vehicle subsequent to the collision and thus might have demonstrated that something other than the alleged design defect caused the plaintiffs' injuries. The plaintiffs claim that this request for evidentiary sanctions is different in character than the other requests because it would "cut the heart out of the plaintiffs' case by depriving them of their main theory of liability."  Pls.' Obj. at 13-14.

The court declines to consider the effect on the plaintiffs' case as a factor in determining the appropriateness of spoliation sanctions.  However, the court agrees that this request for exclusion presents a different issue than the other requests by the defendants.  The plaintiffs' claim is that their Vanagon was negligently designed because of its failure to include lap-shoulder belts in the rear seats, and because other Vanagons with the same design still exist the preservation of their individual vehicle is of reduced importance in establishing a design defect. See Collazo-Santiago v. Toyota Motor Corp., 937 F. Supp. 134, 136 (D.P.R. 1996) (dismissal because of spoliation might be appropriate in manufacturing defect claim but not in design defect claim, where other identical vehicles exist to prove or

18

refute such a claim).

To prevail, however, the plaintiffs must still demonstrate that the allegedly defective design was responsible for the damage they suffered. The plaintiffs' Vanagon would be potentially helpful in that respect because it might provide evidence as to the angle of impact of the vehicles in the accident and the resulting force on the Vanagon's occupants. Despite the unavailability of the vehicle itself, the extensive photographs of the accident taken by law enforcement officers provide a basis for reconstructing what happened to the vehicle, and thus to its occupants, after impact. The prejudice to the defendants, while still present, is lessened under these circumstances. For that reason, the plaintiffs' failure to preserve the vehicle does not justify the severe remedy of barring all expert testimony as to their design defect claim. The failure of the plaintiffs to preserve their vehicle and any attendant prejudice may still justify an appropriate limiting instruction, an issue that the court will explore further when the parties properly address it.

Therefore, the court denies the defendants' motion in limine to the extent that it seeks the exclusion of any expert opinion based on the claim that Vanagon rear seats should have been equipped with lap-shoulder belts.

19

## Conclusion

For the reasons stated above, the defendant's motion in limine on spoliation (document no. 28) is granted in part and denied in part.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

August 11, 1997

cc:  Howard Meyers, Esquire
     Alan Cantor, Esquire
     John Cronin, Esquire